# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Jason Carr, Vicki LeMaster, Edward Ford Services LLC, Carlton Morgan¸ 365 Sun LLC and Candice Worthy, *individually and on behalf of all others similarly situated*,<br><br>                      Plaintiffs,<br><br>     v.<br><br>Kabbage, Inc. d/b/a K Servicing,<br><br>                      Defendant. | Civil Action No. _____<br><br><br>**CLASS ACTION<br>COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jason Carr, Vicki LeMaster, Edward Ford Services LLC, Carlton Morgan¸ 365 Sun LLC and Candice Worthy, individually and on behalf of all others similarly situated, bring this Class Action Complaint and Demand for Jury Trial against Defendant Kabbage, Inc. d/b/a K Servicing (referred to herein as "Kabbage" or "K Servicing" depending on timeframe of reference) seeking declaratory judgment, injunctive relief and damages as a result of K Servicing's abject and ongoing failure to discharge its duties and obligations as servicer of thousands of Small Business Association ("SBA") Paycheck Protection Program ("PPP") emergency loans by failing to timely and competently process PPP loan forgiveness applications. As and for their class action complaint, Plaintiffs allege the following based upon their personal knowledge and experiences and, where indicated, upon

information and belief, as well as based on due investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.     In March of 2020, with the onset of the COVID-19 pandemic and its devastating impact on small businesses across the United States, Kabbage, an Atlanta-based financial technology lender, was likewise facing tremendous difficulties and had furloughed a "significant number" of its domestic team of 500 employees, closed its office in India, reduced executive compensation and paused its lending operations, anticipating the contraction of its customer base.

2.     At the same time as it was taking these drastic measures, Kabbage was simultaneously lobbying the United States Treasury Department to gain inclusion as a loan originator in the Paycheck Protection Program ("PPP"), as it thought it could generate millions of dollars in origination fees, revive its floundering business and make itself an attractive acquisition target.

3.     Turns out Kabbage was right about its ability to save itself, but sadly it had absolutely no intention or ability to actually service the hundreds of thousands of PPP loans it would be paid to originate.

4.     In April of 2020, the United States Treasury Department announced that financial technology ("FinTech") firms including Kabbage were authorized to originate loans to small businesses as a part of the United States government's

CARES Act, the giant stimulus package which eventually would grow to include over $800 billion in loan guarantees for small businesses.

5.    In its effort to gain Treasury approval as a PPP lender, Kabbage rushed to frantically restructure its technology "in less than one week to allow potential borrowers to apply for the government-backed loans."  While its executives boldly (and frequently) proclaimed Kabbage to be the savior of small businesses, it never applied the same ingenuity or competence when it came to actually servicing the PPP loans it originated.

6.    Kabbage has touted the relatively modest size of loans for which it processed initial loan applications as a sign of its dedication to the smallest, most vulnerable businesses, yet there was a direct financial incentive for Kabbage to service these small loans.  Under the rules of the PPP program, lenders earn the highest percentage fees on loans under $350,000.

7.    By the end of the first two funding rounds in early August 2020, Kabbage had issued the second-largest number of PPP loans in the country.

8.    All told, Kabbage received between $330 million and $340 million in fees on $7 billion in approved PPP loans, and in doing so caught the eye of American Express, which agreed to acquire most of Kabbage's assets for $850 million in 2021. American Express is quick to make it clear though that it did not acquire the PPP

loan servicing arm, which was promptly renamed K Servicing in an effort to make it appear like a separate entity.

9.    Kabbage's "redemption" story is very far from a feel-good affair. While Kabbage was once just as imperiled as the small businesses that it is brazenly professes to serve, the federal bailout program aimed at rescuing its customer base ended up having the perverse effect of being the lender's salvation and pushing the borrowers closer to financial ruin.

10.    The newly orphaned company, K Servicing (which is the "d/b/a" of Kabbage) was left completely bereft of competent employees and necessary resources to properly service the hundreds of thousands of loans for which Kabbage had already received hundreds of millions of dollars in fees.

11.    Despite its clear ineptitude, Kabbage inexplicably elected *not* to participate in the Small Business Administration's Direct Borrower Forgiveness Portal, a streamlined Portal for processing borrower loan forgiveness applications for all PPP loans of $150,000 or less.  Upon receipt of notice that a borrower has applied for forgiveness through the Portal, lenders can immediately review the loan forgiveness application and issue a forgiveness decision to SBA.

12.    K Servicing's decision not to participate in the SBA's Direct Borrower Forgiveness Portal would be excusable *if* it actually could and did process loan

forgiveness applications in a timely and competent manner. Sadly, it has continuously failed to do so.

13.    Plaintiffs and Class members have faced tremendous (and avoidable) uncertainty and stress—not to mention wasted hundreds and hundreds and hours of time, and in some cases precious financial resources—with K Servicing's "customer service," being asked to provide documentation above and beyond what the SBA's regulations actually require, being asked to provide documentation that they previously submitted (multiple times), receiving apparently fraudulently altered documents that contain inaccurate information about their loans and requested forgiveness amounts, and being asked to make payments on loans that should have been forgiven long ago, among many, many other issues.

14.    The SBA's Interim Final Rules require servicers to make a determination on a loan forgiveness application within sixty days, as well as to do so in good faith. However, K Servicing routinely failed to respond at all within that mandated timeline and, if it did respond, it did so merely to demand (again and again) irrelevant and non-existent documentation ostensibly in hopes of re-starting the sixty-day clock.[1]

---

[1]    In or about December of 2020, and as experienced by many of the representative Plaintiffs, Kabbage—despite professing to possess the requisite technical capabilities to service these PPP loans—basically outsourced the creation and maintenance of a new portal (its current one was, of course, not working) for processing forgiveness applications. PPP borrowers whose loans were serviced by

15.     Particularly concerning is that oftentimes K Servicing would deny a forgiveness application but then immediately send the borrower a pre-populated forgiveness application with the requested forgiveness amount set to $0.

16.     Due to K Servicing's ongoing obstruction of the SBA-mandated forgiveness process, many of its small business owner customers have become trapped in a frustrating maze, being bounced between the SBA, the funders of the loans and K Servicing's off-shore "customer service."

17.     There are approximately 350,000 PPP loans made to small businesses in 2020 during the Covid-19 pandemic that have not been forgiven, and most of them are for less than $25,000.  And, of the top 2020 PPP lenders, Kabbage has—far and away—the lowest forgiveness rate at 54%.[2]

18.     To make matters worse, the most recent SBA data finds that PPP loan forgiveness rates have been significantly lower for small businesses that are based in majority Black and majority Hispanic ZIP codes, forcing minority entrepreneurs

---

Kabbage could not access the new (or old) portal, provide documents or otherwise check on the status of the forgiveness applications for several months, well in excess of the 60-day time period mandated by the SBA.

[2]     *Small Businesses Still Face $28 Billion of Unforgiven PPP Loans, That lingering debt is creating a burden for the smallest businesses, including many run by minority entrepreneurs*, BLOOMBERG EQUALITY CAPITAL, Amy Yee & Andre Tartar (Feb. 17, 2022).

to experience yet another layer of difficulty in pursuing the forgiveness to which they are entitled.

19.    The ongoing impact of Kabbage's sheer incompetence cannot be overstated; simply put, the lingering debt of outstanding PPP loans—about $28 billion—is creating a burden for the smallest businesses, including many run by minority entrepreneurs.[3]

20.    Small businesses, like the Representative Plaintiffs in this case, provide almost half of all jobs in the United States and create nearly two-thirds of all new jobs.[4]

21.    Kabbage's avarice, evidenced by its rush to process as many loans as possible and thereby rack up origination fees at the highest rates, continues to crush these small businesses, which were already facing their most challenging years to date.

---

[3]    *See PPP loans were made to be forgiven. In heavily Black areas like South Florida, many* aren't, MIAMI HERALD, BLOOMBERG EQUALITY CAPITAL, Ben Wieder (March 24, 2022) (noting that most PPP lenders have forgiveness rates at or above 90%).

[4]    *See* February 17, 2022 Letter from Center for Responsible Lending to The Honorable Janet Yellen, Secretary of the Treasury, *et al.*, "asking the SBA, the U.S. Treasury and Congress to take steps to help small business owners with outstanding PPP, including by automatically forgiving those of $25,000 or less," available here https://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/crl-coalition-letter-to-congress-sba-ppp-forgiveness-17feb2022.pdf, last visited March 29, 2022.

22.     For the hundreds of thousands of borrowers who utilized Kabbage for the funding and servicing of their PPP loans, it is understandably hard to countenance the unmitigated gall of Kabbage's then-CEO Rob Frohwein when he stated that "[t]he smallest businesses in America are always the hardest hit, the most vulnerable and the most in need when a crisis strikes, and together with our bank partner, we are working tirelessly to support them. We have the technology to respond to this national crisis and provide equal opportunity to the millions of business owners seeking relief." Yet the process of seeking loan forgiveness for Kabbage's borrowers has proved the exact opposite.

23.     Simply put, Kabbage is one of the most opportunistic profiteers to emerge from the COVID-19 global pandemic. Yet, despite its own financial gain, Kabbage has so badly mismanaged the SBA PPP loan forgiveness process that it has financially and emotionally devastated the very people Congress intended to help.

## THE PARTIES

**A.     Representative Plaintiffs**

24.     Plaintiff Jason Carr is a resident of Forsyth County, North Carolina.

25.     Plaintiff Vicki LeMaster is a resident of Miami-Dade County, Florida.

26.     Plaintiff Edward Ford Services LLC is a Michigan Limited Liability Company, with its principal address in Belleville, Michigan.  DeJuan Ford is a

citizen of Michigan and is the sole and managing member of Edward Ford Services LLC.

27.    Plaintiff Carlton Morgan is a resident of Los Angeles County, California.

28.    Plaintiff 365 Sun LLC is a Florida Limited Liability Company, with its principal place of business in Palmetto, Florida.  Lance Thompson is a citizen of Florida and is the sole and managing member of 365 Sun LLC.

29.    Plaintiff Candice Worthy is a resident of Chatham County, Georgia.

**B.    Defendant**

30.    Defendant Kabbage, Inc. d/b/a K Servicing is an online financial technology company incorporated in the State of Delaware with its principal place of business in Atlanta, Georgia. Defendant Kabbage, Inc. d/b/a/ K Servicing is a citizen of Georgia.

## JURISDICTION AND VENUE

31.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because at least one Class member is of diverse citizenship from Defendant, there are more than 100 Class members nationwide and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

32.     This Court has general personal jurisdiction over Defendant because it has its principal place of business in Atlanta, Georgia.  Defendant is a citizen of Georgia.  Minimal diversity requirement of CAFA is met.

33.     This Court has specific personal jurisdiction over Defendant because a substantial part of the actions or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

34.     The exercise of specific personal jurisdiction over Defendant is consistent with due process as Defendant has voluntarily subjected itself to the jurisdiction of this Court, regularly transacts business within this judicial district, has purposefully availed itself of the jurisdiction of this Court for the specific transactions at issue and is domiciled in Georgia, with its principal place of business located in Atlanta, Georgia.

35.     Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

36.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant and Defendant has sufficient contacts with this District.

## FACTUAL BACKGROUND

**A.      Overview of SBA's PPP Loan Program**

37.    In what was intended to be a much-needed emergency lifeline for millions of Americans struggling through an unprecedented global pandemic, the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act") was signed into law on March 27, 2020.[5]

38.    The CARES Act established the SBA PPP, which was initially tasked with providing up to $349 billion in funding for loans to entities including small businesses, certain nonprofit organizations, sole proprietorships, independent contractors and self-employed individuals to see them through the economic upheavals brought on by the global public health crisis.[6]

39.    The PPP loans were to be administered using the existing SBA 7(a) loan guaranty program, but with key differences intended to expedite the intended relief for qualified borrowers, who were desperate to keep their businesses afloat and, to the extent possible, to maintain day-to-day operations.

40.    The PPP loans could be used to cover qualified payroll costs, rent, utilities and interest on mortgage and other debt obligations in an effort to allow

---

[5]    *See* Pub. L. 116-136.

[6]    Some of the more salient features of the PPP loans are that they came with a 100% SBA loan guarantee, there were no borrower fees, a 1% interest rate, a two-year term and any loan repayment obligation was deferred for six months. *See*, U.S. TREASURY, *PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET:        BORROWERS*,        available        at https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf,    last    accessed March 22, 2022.

borrowers to maintain pre-COVID-19 employment numbers and compensation levels as nearly as possible.

41.    The first round of PPP loans totaling $349 billion were to be distributed on a first-come, first-serve basis through June 30, 2020.

42.    Traditional lending institutions began processing loan applications immediately in early April and the initial $349 billion set aside by Congress ("Round One") was completely exhausted by April 16, 2020.

43.    Just over a week later, on April 24, 2020, Congress provided an additional $310 billion for the PPP in H.R. 266, the Paycheck Protection Program and Health Care Enhancement Act ("Round Two").

44.    Round Two of funding for the First Draw ran through August 8, 2020, at which time approximately $134 billion in PPP funds remained undisbursed.

45.    The Consolidated Appropriations Act, 2020 (the "CAA") was signed into law on December 27, 2020, and included, once again, $284 billion for the PPP program ("Round Three" of funding the program, the "Second Draw" for borrowers).[7]

---

[7]    The CAA also rescinded the money that had remained in the program at the end of Round Two, simultaneously increasing and decreasing the funds available to the program on re-authorization.

46.    The SBA opened this "Second Draw" of the PPP loans on Monday January 13, 2021, with a period where access to the program would only be possible for community-centered small businesses and those owned by minorities (the Second Draw was later opened to all who qualify).[8]

47.    On May 5, 2021, the SBA announced that all funds for the PPP as a whole – over $800 billion – had been nearly exhausted, except for a small amount of funding previously set aside for community-based small businesses and minority borrowers.[9]

**B.    FinTech Companies, including Kabbage, Lobby to Participate in the PPP Program**

48.    The first of many Interim Final Rules ("IFR") enacted by the SBA allowed for the United States Treasury to approve of Additional Lenders, in addition to previously qualified SBA section 7(a) lenders.[10]

---

[8]    SMALL BUSINESS ASSOCIATION bulletin, *PPP Re-Opens to First Time Borrowers TODAY; Second Draw Applications Accepted on January 13th!* (January 11, 2021, 5:58 PM), https://content.govdelivery.com/accounts/USSBA/bulletins/2b591e6, last accessed March 22, 2022.
[9]    Carmen Reinicke, *Paycheck Protection Program has run out of money for most borrowers. What you need to know*, CNBC.COM (May 5, 2021, 3:43 PM), https://www.cnbc.com/2021/05/05/ppp-has-run-out-of-money-for-most-borrowers-what-to-know.html, last accessed March 22, 2022.
[10]    *See* Federal Register Vol. 85, No. 73.

49.     This initial IFR also established that the SBA would hold harmless any lender for borrowers that failed to comply with program criteria, effectively granting immunity to lenders for any fraudulent applications and incentivizing more potential lenders to begin distributing the PPP loans.

50.     Financial technology companies ("FinTechs") "lobbied federal officials hard to participate in emergency lending," and in April 2020 several FinTech lenders, including Kabbage, were approved to distribute the SBA PPP loans.[11]

51.     In its effort to gain Treasury approval as a PPP lender, which proved successful, Kabbage frantically rushed to restructure its technology "in less than one week to allow potential borrowers to apply for the government-backed loans."[12]

---

[11]     *See* John Reosti, Penny Crosman, *Fintechs OK'd to make emergency small business loans*, AMERICAN BANKER (April 13, 2020, 6:02 PM), https://www.americanbanker.com/news/fintechs-okd-to-make-emergency-small-business-loans. *See also*, Sarah Perez, *PayPal, Intuit & Square approved to offer loans to small businesses through coronavirus relief program*, TECHCRUNCH (April 13, 2020, 12:29 PM), https://techcrunch.com/2020/04/13/paypal-intuit-square-approved-to-offer-loans-to-small-businesses-through-coronavirus-relief-program/, last accessed March 22, 2022.

[12]     *Kabbage Partners with SBA-Authorized Bank to Deliver Paycheck Protection Program Loans to Small Businesses*, BLOOMBERG.COM (April 7, 2020, 10:48 AM), https://www.bloomberg.com/press-releases/2020-04-07/kabbage-partners-with-sba-authorized-bank-to-deliver-paycheck-protection-program-loans-to-small-businesses, last accessed March 22, 2022.

-14-

52.     By mid-April of 2020, the federal government officially approved several FinTech companies to participate in the PPP by processing loan applications.[13]

53.     Kabbage likely lobbied for its own inclusion in the PPP program because it thought it could generate millions of dollars in origination fees, revive its floundering business and make itself an attractive acquisition target.  Yet Kabbage had no realistic intention of servicing the hundreds of thousands of small dollar PPP loans it distributed.

54.     Still, Kabbage was approved as a lender, and the first IFR mandated that "[l]enders must comply with the applicable lender obligations set forth in this interim rule."[14]

55.     Kabbage both issued PPP loans as an SBA-authorized lender as well as in partnership with other approved SBA Lenders, serving as the originator for lenders such as Customers Bank and Cross River Bank.[15]

---

[13]     Brian P. Coughlan, Carolee Anne Hoover & Molly M. White, *Update – Fintech Lenders Approved to Participate in the Paycheck Protection Program*, MCGUIREWOODS (April 14, 2020), https://www.consumerfinsights.com/2020/04/update-fintech-lenders-approved-to-participate-in-the-paycheck-protection-program/, last accessed March 22, 2022.

[14]     Federal Register Vol. 85, No. 73.

[15]     Ben Wieder, *Unforgiven: Two Years later, small businesses still waiting for promised PPP loan forgiveness*, Miami Herald (March 8, 2022), attached as Group Ex. A.

**C.     Kabbage Was Nearly Bankrupt by the Onset of COVID-19; Being Selected to Originate and to Service PPP Loans Ended Up Being Its Salvation.**

56.     Kabbage is (or was) a financial technology (aka "FinTech") company that initially launched in May 2011.

57.     Kabbage's business model included using machine learning to evaluate loan applications, which it would later pitch as a perfect match for small business owners who needed access to capital quickly.

58.     According to its co-founder and former COO, Kathryn Petralia, Kabbage "pioneered 21st century business financing by collapsing the time it takes to obtain a loan from weeks to a few minutes."[16]

59.     But by March of 2020, with the onset of the COVID-19 pandemic and its devastating impact on small businesses across the United States, Kabbage itself was on the verge of collapsing and had furloughed a 'significant number' of its US team of 500 employees, closed its office in Bangalore, India, reduced executive compensation, and paused its lending operation, anticipating the contraction of its customer base.[17]

---

[16]     KABBAGE, *Kabbage Closes $50 Million Series D Led by Softbank Capital* (May 5, 2014), https://newsroom.kabbage.com/news/company/kabbage-closes-50-million-series-d-led-by-softbank-capital/, last accessed March 22, 2022.

[17]     *See* Ari Levy, *How Kabbage saved its small business lending operation in the middle of the pandemic*, CNBC.COM (June 17, 2020, 11:03 AM), https://www.cnbc.com/2020/06/17/kabbage-turned-to-doling-out-ppp-loans-to-save-its-lending-business.html; *see also* Ingrid Lunden, *SMB loans platform*

60.    As detailed below, the PPP program would provide Kabbage the opportunity to originate a tremendous number of loans and to receive hundreds of millions of dollars in loan origination fees.

**D.    Kabbage Receives Massive Fees for Originating PPP Loans and, in turn, Is Acquired by American Express for Nearly a Billion Dollars.**

61.    With the rapid onset of the COVID-19 pandemic, the demand for PPP loans was so high that traditional banks quickly became overwhelmed and often prioritized existing customers with whom they had preexisting financing relationships.

62.    Kabbage boasted about the ability of its technology to turn around loan applications in record time and using a fully automated process, with 75% of overall loans (and 90% of self-employed loans) being approved with no human interaction.[18]

63.    Kabbage's median time from application to approval was only 4 hours.[19]

_____

*Kabbage to furlough a 'significant' number of staff, close office in Bangalore*, TECHCRUNCH (May 30, 2020), https://techcrunch.com/2020/03/30/smb-loans-platform-kabbage-to-furlough-a-significant-number-of-staff-close-office-in-bangalore/, last accessed March 22, 2022.

[18]    KABBAGE, *Kabbage PPP Results: A Historic Feat for FinTech* (Updated as of August 8, 2020), https://newsroom.kabbage.com/wp-content/uploads/2020/07/Kabbage-Paycheck-Protection-Program-PPP-Report.pdf, last accessed March 22, 2022.

[19]    *Id.*

64.    Co-founder and then-CEO of Kabbage Rob Frohwein was quoted in the press reassuring understandably nervous and anxious small business owners, "[t]he smallest businesses in America are always the hardest hit, the most vulnerable and the most in need when a crisis strikes, and together with our bank partner, we are working tirelessly to support them."[20]

65.    And, while that sentiment certainly sounds nice in a press release, the truth of the matter could not be farther from those words.  In short, Kabbage has not come close to supporting the smallest businesses in America.  In fact, it has intentionally turned on its back on them and left them to fend for themselves after piling up its ill-deserved origination fees and was acquired by American Express.

66.    The banks and FinTech companies that participated in the PPP program received significant fees for originating loans.  Those entities were paid a fee, on a sliding scale based on the size of the loan, for each application they pushed through.

---

[20]    *Supra,* n. 12, *Kabbage Partners with SBA-Authorized Bank to Deliver Paycheck Protection Program Loan to Small Businesses*, BLOOMBERG.COM (April 7, 2020, 10:48 AM), https://www.bloomberg.com/press-releases/2020-04-07/kabbage-partners-with-sba-authorized-bank-to-deliver-paycheck-protection-program-loans-to-small-businesses, last accessed March 22, 2022.

67.     After the First Draw of PPP loan funding was exhausted, SBA lenders had "earned billions of dollars in fees from processing over 4.5 million PPP loans worth more than $511 billion."[21]

68.     PPP Loans approved by Kabbage in 2020 alone generated more than $145 million in fees.[22]

69.     Loans approved by partner banks Cross River and Customers generated an additional $405 million.[23]

70.     By the end of the program's extension in early August, Kabbage became the second-largest PPP lender in the country with nearly 300,000 approved applications that amounted to over $7 billion in small business funding.[24]

---

[21]     Robin Saks Frankel, *Banks Made Billions on PPP Loans. Learn What They're Doing With The Cash*, FORBES (July 10, 2020, 8:51 PM), https://www.forbes.com/sites/advisor/2020/07/10/banks-made-billions-on-ppp-loans-learn-what-theyre-doing-with-the-cash/?sh=581da9df7f2f, last accessed March 22, 2022.

[22]     *See* Ben Wieder, *Unforgiven: Two Years later, small businesses still waiting for promised PPP loan forgiveness*.

[23]     *Id.* (stating that "Kabbage and other FinTech companies typically processed the applications using their online systems and then put the loans on the books of their partner banks, splitting the fees").

[24]     Riley de Leon, *American Express acquiring small business lender Kabbage*, CNBC.COM (August 17, 2020, 4:33 PM), https://www.cnbc.com/2020/08/17/american-express-acquiring-small-business-lender-kabbage.html, last accessed March 22, 2022.

71.    In an ironic twist, originators of the smallest loans to the smallest, most vulnerable businesses generated the most revenue for themselves based on origination fees:



Note: Data from 2021 includes all loans made through May.  •  Source: Analysis of data from the Small Business Administration

Source: NEW YORK TIMES[25]

72.    Kabbage's participation in the PPP program turned out to be a lifeline not for struggling small businesses, but for *itself*.

**E.    Once Kabbage Made Millions on Origination Fees and Was Acquired, It Left a Shell of a Company Wholly Incapable of Servicing PPP Loans Behind.**

73.    Thanks largely to its newly minted hundreds of millions of dollars in fees, Kabbage became an attractive takeover target and American Express

---

[25]    Stacey Cowley and Ella Koeze, *How Two Start-Ups Reaped Billions in Fees on Small Business Relief Loans*, THE NEW YORK TIMES (June 27, 2021), https://www.nytimes.com/2021/06/27/business/ppp-relief-loans-blueacorn-womply.html?searchResultPosition=12, last accessed March 22, 2022.

announced in August 2020 that it would acquire Kabbage for approximately $850 million.[26]

74.    However, Kabbage's pre-existing loan portfolio – including all of the PPP loans it was servicing – was not included in the purchase agreement.[27]

75.    In announcing the acquisition, American Express went to great pains to say that it had acquired "substantially" all of Kabbage except for the PPP Loan servicing division, which would be re-named K Servicing:

**What are the details of Kabbage's acquisition by American Express?**

On 10/16/20, American Express acquired substantially all of Kabbage to expand support of businesses like yours with the backing of one of the most respected financial companies in the world. You can continue to access financial solutions offered by Kabbage, now an American Express Company—like payment processing, checking accounts and cash flow

---

[26]    Luisa Beltran, *American Express Sai to Be in Talks to Buy Kabbge for $850 Million*, BARRON'S (August 11, 2020, 10:56 AM), https://www.barrons.com/articles/american-express-said-to-be-in-talks-to-buy-kabbage-for-850-million-51597157814, last accessed March 22, 2022.

[27]    Ingrid Lunden, *Amex acquires SoftBank-backed Kabbage after tough 2020 for SMB lender*, TECHCRUNCH (August 17, 2020), https://techcrunch.com/2020/08/17/amex-acquires-softbank-backed-kabbage-after-tough-2020-for-the-smb-lender/; *see also* AMERICAN EXPRESS, *Acquisition Will Expand American Express' Digital Cash Flow Management Offerings for Small Businesses* (August 17, 2020), https://about.americanexpress.com/all-news/news-details/2020/American-Express-to-Acquire-Kabbage/default.aspx, last accessed March 22, 2022.

insights—at kabbage.com. Paycheck Protection Program (PPP) and outstanding Kabbage Funding$^{TM}$ loans will be managed by Kabbage, Inc. through K Servicing for Kabbage through a new K Servicing site.

76.     Instead, the loan portfolio previously belonging to the entity known as Kabbage was to be managed by a "new" entity known as K Servicing.

77.     Almost overnight, K Servicing became the new point of contact for customers who had previously applied and had their loans disbursed by Kabbage (as well as those funded by Kabbage partner banks, Customers Bank and Cross River Bank).

78.     In addition to servicing loans disbursed by Kabbage prior to its acquisition by American Express, K Servicing processed disbursements of "Second Draw" PPP loans.

79.     Now that all PPP funding has been exhausted and it is tasked with the project of servicing loan forgiveness applications, K Servicing has left borrowers frustrated, confused and searching for answers as their businesses hang on by a thread.

80.     Several media reports have detailed the enormous obstacles and difficulties that small businesses and individual borrowers have experienced as a result of Kabbage/K Servicing's abject failure to timely and competently process loan forgiveness applications of its borrower clients:

- *Small Businesses Still Face $28 Billion of Unforgiven PPP Loans, That lingering debt is creating a burden for the smallest businesses, including many run by minority entrepreneurs*, BLOOMBERG EQUALITY CAPITAL, Amy Yee & Andre Tartar (Feb. 17, 2022);

- *PPP loans were made to be forgiven.  In heavily Black areas like South Florida, many* aren't, MIAMI HERALD, Ben Wieder (March 24, 2022);

- *Unforgiven: Two Years later, small businesses still waiting for promised PPP loan forgiveness*, MIAMI HERALD, Ben Wieder (March 8, 2022);

- *AmEx's purchase of online lender Kabbage left desperate PPP borrowers in the cold*, CNBC.COM, Ari Levy (April 7, 2021), available at https://www.cnbc.com/2021/04/07/amex-acquisition-of-online-lender-kabbage-hurt-ppp-borrowers.html.[28]

81.    As detailed below, borrowers have faced uncertainty and frustrating interactions with K Servicing's "customer service," being asked to provide documentation above and beyond what the SBA's regulations actually require, being asked to provide documentation that they previously submitted, receiving documents that contain inaccurate information about their financing and accounts, and being asked to make payments on loans that should have been forgiven long ago, among other things.

---

[28]    A true and correct copy of each cited article is attached as Group Exhibit A hereto.

82.    Over the past year, various FinTechs, including Kabbage, have attracted government scrutiny because they processed loans at high-speed using software that in some cases had glitches, causing errors in applications.[29]

83.    Other industry sources have said that FinTechs' use of automated lending platforms with few manual checks potentially caused errors to be replicated across thousands of loans.[30]

84.    Still, many business owners and entrepreneurs, including Plaintiffs and the putative class members, trusted Kabbage to assist them in obtaining legitimate government resources, to which they were fully entitled, in their time of need.

85.    For these borrowers, what initially seemed like a saving grace has turned into a living nightmare.

**F.    The PPP Loan Forgiveness Process**

86.    The first IFR published in the Federal Register on April 15, 2020 outlined that PPP loan forgiveness was available up to the full principal amount of the PPP loan (and all accrued interest) if the entirety of the loan was utilized for approved expenses in the eight-week period following the date of the loan.[31]

---

[29]    Koh Gui Qing & Pete Schroeder, *U.S. Justice Department probing Kabbage, fintechs over PPP loan calculations – sources*, REUTERS (May 7, 2021, 9:29 PM), https://jp.reuters.com/article/us-health-coronavirus-usa-probe-idCAKBN2CP020, last visited March 29, 2022.

[30]    *Id*.

[31]    *See* Federal Register Vol. 85, No. 73.

87.     That IFR stated, in response to the question, "Can lenders rely on borrower documentation for loan forgiveness?," "Yes. The lender does not need to conduct any verification if the borrower submits documentation supporting its request for loan forgiveness and attests that it has accurately verified the payments for eligible costs."[32]

88.     Over time the SBA would streamline these requirements, but even from the beginning lenders were tasked with accepting the verifications of their borrowers.

89.     On May 18, 2020, the SBA released the first version of the borrower's application for PPP loan forgiveness (Form 3508).[33]

90.     The SBA continued to release guidance with respect to the lender review process for loan forgiveness applications, including another IFR published in the *Federal Register* on June 1, 2020, which more formally established the Loan Review Procedures and Related Borrower and Lender Responsibilities (the "Loan Review Process IFR").[34]

---

[32]     *See id.*

[33]     *See* SMALL BUSINESS ASSOCIATION, "Paycheck Protection Program Loan Forgiveness Application Revised June 16, 2020," available at https://home.treasury.gov/system/files/136/3245-0407-SBA-Form-3508-PPP-Forgiveness-Application.pdf, last visited March 29, 2022.

[34]     *See* Federal Register Vol. 85, No. 105.

91.    The Loan Review Process IFR stated that the "lender must issue a decision to SBA on a loan forgiveness application not later than 60 days after receipt of a complete loan forgiveness application from the borrower."[35]

92.    The Loan Review Process IFR also stated each lender must perform a good-faith review to "[c]onfirm the borrower's calculations on the borrower's Loan Forgiveness Application…by reviewing the documentation submitted with the Loan Forgiveness Application."[36]

93.    If the lender discovered missing documents or incorrect calculations, the Loan Review IFR provided that the lender should work – again, in good faith – with the borrower to fix the problems.

**G.    SBA Streamlines the Forgiveness Process for PPP Loans Under $150,000.**

94.    On June 5, 2020, H.R. 7010, the Paycheck Protection Program Flexibility Act of 2020 ("PPP Flexibility Act") was signed into law, making several changes to the PPP including extending the covered period for making qualifying expenditures eligible for forgiveness from 8 to 24 weeks.[37]

95.    The PPP Flexibility Act also prompted the SBA to release a revised version of forgiveness application (Form 3508) to account for changes mandated by

---

[35]     *See id.*
[36]     *See id.*, 2.a.iii.
[37]     *See* Pub. L. 116-142.

Congress, in addition to releasing an EZ loan forgiveness application (Form 3508EZ) requiring even fewer calculations and less documentation for certain borrowers.

96.    The SBA began accepting PPP lender loan forgiveness submissions on August 10, 2020 and began issuing decisions on these submissions (and remitting funds to lenders) on or about October 2, 2020.

97.    On October 8, 2020, the SBA released yet another forgiveness application for disbursed PPP loans of $50,000 or less (Form 3580S).[38]

98.    This 3508S form was intended to "streamline[] the PPP forgiveness process to provide financial and administrative relief to America's smallest businesses while also ensuring sound stewardship of taxpayer dollars."[39]

99.    The SBA also released another IFR with a purpose of "allowing lenders to process forgiveness applications more swiftly" for loans of $50,000 or less, including changes to the Loan Review Process IFR, simplifying the review process for lenders when a borrower submits the SBA Form 3508S to require the lender to do two things: (i) confirm receipt of the borrower's certifications on the form and

---

[38]    SMALL BUSINESS ASSOCIATION press release, *SBA and Treasury Announce Simpler PPP Forgiveness for Loans of $50,000 or Less* (October 8, 2020), https://www.sba.gov/article/2020/oct/08/sba-treasury-announce-simpler-ppp-forgiveness-loans-50000-or-less, last visited March 29, 2022.
[39]    *Id.*

(ii) confirm receipt of the documentation the borrower must submit to aid in verifying payroll and non-payroll costs.[40]

100.    Importantly, the IFR that corresponded with the SBA's release of Form 3508S no longer required lenders to confirm the borrower's calculations on the loan forgiveness application for loans of $50,000 or less.

101.    These changes were intended to reduce the amount of time and efforts spent by lenders on processing loan forgiveness applications for loans of $50,000 or less.

102.    In January of 2021, the SBA issued yet another revised PPP loan forgiveness application Form 3508S, which increased the loan amount for which the form could be used from $50,000 to $150,000.[41]

103.    Again, this was done to drastically reduce the amount of time and effort lenders and borrowers were required to put into the loan forgiveness application review process.

104.    In a corresponding IFR, the SBA stated that: "[a]n eligible borrower that received a loan of $150,000 or less should use the SBA Form 3508S and **shall**

---

[40]    *See* Federal Register Vol. 85, No. 202.
[41]    *See* SMALL BUSINESS ASSOCIATION, "Paycheck Protection Program PPP Loan Forgiveness Application Form 3508S Revised January 19, 2021," available at https://www.sba.gov/sites/default/files/2021-01/PPP%20--%20Forgiveness%20Application%20and%20Instructions%20--%203508S%20%281.19.2021%29-508.pdf, last accessed March 23, 2022.

**not**, at the time of its application for loan forgiveness, **be required to submit *any* application or documentation** in addition to the certification and information required by section 7A(I)(1)(A) of the Small Business Act."[42]

105.  In sum, by early 2021, the revised Form 3508S was shortened to one page and no longer required the submission of supporting loan forgiveness documentation for loans of $150,000 or less.

**H.    Despite Reducing its Loan Servicing Operations to a Skeletal and Incompetent Crew, Kabbage Inexplicably Elects Not to Participate in the SBA Direct Borrower Forgiveness Portal.**

106.  In July of 2021, the SBA announced it would be making available a Direct Borrower Forgiveness Portal as an alternative method for processing borrower loan forgiveness applications for all PPP loans of $150,000 or less, *which accounted for nearly 93% of all PPP loans.*[43]

107.  When a PPP lender elects to participate in the Direct Borrower Forgiveness Portal, the Portal can provide a single secure location for all of its borrowers with loans of $150,000 or less to apply for loan forgiveness through the Portal using the electronic equivalent of SBA Form 3508S.[44]

---

[42]    Federal Register Vol. 86, No. 23 (emphasis added).
[43]    *See* 13 CFR Part 120, available at https://www.sba.gov/sites/default/files/2021-07/FINAL%20IFR%20Forgiveness%207.23.21-508.pdf, last accessed March 23, 2022.
[44]    *Id.*

108.    Upon receipt of notice that a borrower has applied for forgiveness through the Portal, lenders can review the loan forgiveness application in the Portal and issue a forgiveness decision to SBA inside the Portal.

109.    SBA was of the belief that lenders that opt-in to using the Direct Borrower Forgiveness Portal would benefit from reduced costs, increased efficiency and more timely remittance of forgiveness payments from SBA, while borrowers would benefit from the ability to submit loan forgiveness applications directly through the Portal and reduce the wait time and uncertainty associated with submission through their lender.[45]

110.    Kabbage, flush with cash from its acquisition by American Express, was seemingly unconcerned with actually assisting borrowers achieve forgiveness in the most expedient possible manner and did not elect to participate in the SBA's streamlined Portal.[46]

111.    To reiterate, Kabbage's participation in the SBA's PPP Program as a disburser of small dollar loans was prolific.

_____

[45]    Jeff Drew, *SBA streamlines forgiveness process for most PPP loans*, JOURNAL OF ACCOUNTANCY (July 28, 2021), https://www.journalofaccountancy.com/news/2021/jul/sba-streamlines-forgiveness-process-most-ppp-loans.html, last accessed March 22, 2022.
[46]    *Id*. The only reasons proffered by the lenders which elected not to participate (*i.e.*, Kabbage) was that they were concerned about the functionality of the SBA's direct borrower portal, a contention that is particularly suspect given the rampant failings of Kabbage/K Servicing and its servicing portals.

112.    Kabbage ultimately became one of the largest PPP lenders in the country by volume of loans, with nearly 300,000 approved applications that amounted to over $7 billion in small business funding.[47]

113.    Yet, despite all of its empty rhetoric and self-congratulatory press releases, the truth of the matter is that "Kabbage … has the worst forgiveness of any major lender in the [PPP] program" (and its partner banks are close behind).[48]

114.    Only 54% of PPP loans originated by Kabbage in 2020 had been forgiven as of early January 2022, which pales in comparison to the overall forgiveness rate of non-Kabbage-serviced PPP loans (93%).[49]

---

[47]    *See* Ari Levy, *AmEx's purchase of online lender Kabbage left desperate PPP borrowers in the cold*, CNBC.COM (April 7, 2021), attached as Group Ex. A; *see also* KABBAGE, *Kabbage PPP Results: A Historic Feat for FinTech* (updated as of August 8, 2020), available at https://newsroom.kabbage.com/wp-content/uploads/2020/07/Kabbage-Paycheck-Protection-Program-PPP-Report.pdf, last visited March 29, 2022.

[48]    According to a Miami Herald analysis of loans approved in the first year of the program. Ben Wieder, *Unforgiven: Two Years later, small businesses still waiting for promised PPP loan forgiveness*, Miami Herald (March 8, 2022), attached as Group Ex. A.

[49]    *Id.*

115.    This makes it even more nonsensical that, despite more than doubling its customer base[50] after an earlier layoff,[51] which would undoubtedly leave Kabbage scrambling to find a workforce to properly service the loans it disbursed, Kabbage refused to take advantage of SBA-created mechanisms for easing the loan forgiveness application review process.

116.    Kabbage's haphazard entry into the market for PPP lending, processing as many loans as it could quickly as possible in order to generate massive origination fees in order to appear an attractive target for its eventual acquirer, American Express, is now creating severe consequences for its small business borrowers who are left holding the bag, spending hours upon hours being shuttled between Kabbage, its partner banks, K Servicing, its off-shore "customer service department" and the SBA.

## I.    Kabbage Is Unwilling or Unable to Process Borrowers' PPP Loan Forgiveness Applications.

---

[50]    Anna Hrushka, *Kabbage nearly doubles customer count through PPP participation*, BANKINGDIVE (July 2, 2020), https://www.bankingdive.com/news/kabbage-customer-count-paycheck-protection-program/580982/, last accessed March 22, 2022.  As of July 2, 2020, Kabbage said it approved $5.8 billion in PPP loans for 209,000 customers — 97% of whom are new to its platform.

[51]    *Supra*, fn. 17, Ingrid Lunden, *SMB loans platform Kabbage to furlough a 'significant' number of staff, close office in Bangalore*, TECHCRUNCH (May 30, 2020), available at https://techcrunch.com/2020/03/30/smb-loans-platform-kabbage-to-furlough-a-significant-number-of-staff-close-office-in-bangalore/, last accessed March 29, 2022.

117.    Despite processing hundreds of thousands of initial PPP loan applications—which grossed Kabbage hundreds of millions of dollars in origination fees—on the back end, Kabbage has been unwilling or unable to process the loan forgiveness applications of its borrower clients.

118.    While it is not clear whether Kabbage's incompetence is intentional, in order to keep these loans on its books and thereby generate additional unwarranted servicing fees on top of unwarranted origination fees or merely negligent, the fact is Kabbage has basically gutted its loan services operations and has left the vast majority of its customers frustrated, anxious and scared that their PPP loans will not be forgiven.

119.    Kabbage has refused to comply with SBA regulations on loan forgiveness and failed its borrower customers in (at least) the following ways:

- ***Failing to process customers' applications within the 60-day turnaround time required by SBA regulations and failing to respond to customers for months at a time.***

120.    Despite initially being approved for their relatively small loans (*e.g.*, $3,000) in just hours, customers seeking forgiveness have waited several months, spent hundreds of hours on the phone and replied to countless emails asking them to (re)submit documents and paperwork that had already been provided or was simply

did not exist.[52]   When understandably frustrated borrowers did eventually reach customer service representatives at Kabbage/K Servicing and informed them that requested documents did not exist or were not applicable to their situation, the representatives told them "to make one up."

121.   One K Servicing customer wrote expressing a commonly held sentiment that while Kabbage was quick to issue loans it seemingly had no interest in actually servicing those very same loans: "They were fast to issue our ppp loan but it has been a year and I have not heard one word on our forgiveness application for our ppp loan. I have emailed and no response on how to move forward from here."[53]

- ***Changing customers' submitted loan forgiveness applications, specifically, changing the "Requested Loan Forgiveness Amount" from the amount of the PPP Loan to be forgiven to "$0," and then requiring customers to sign these forged and inaccurate forms.***

122.   A significant number of Kabbage borrowers report that at some point in their communications with K Servicing throughout the forgiveness process, K Servicing sent them a DocuSign version of their SBA forgiveness Form with the

---

[52]    Ben Wieder, *Unforgiven: Two Years later, small businesses still waiting for promised PPP loan forgiveness*, Miami Herald (March 8, 2022), attached as Group Ex. A.

[53]    William G, Customer Review, BETTER BUSINESS BUREAU (Marcy 2, 2022), available at https://www.bbb.org/us/ga/atlanta/profile/small-business-loans/k-servicing-0443-27469815/customer-reviews, last visited March 29, 2022.

"Requested Loan Forgiveness Amount" wrongfully changed from the correct amount (the amount of the PPP Loan) to "$0.00" and demanding the borrower sign and return this document.[54]

- ***Repeatedly asking customers for unnecessary documentation (even after customers have remitted this wholly unnecessary documentation).***

123.   K Servicing has repeatedly asked customers for unnecessary documentation including documents and information throughout the review process in order to stall the process, causing borrowers confusion, frustration and time loss.

124.   For example, K Servicing has wrongfully demanded borrowers send in articles of incorporation, certificates of organization, voided checks, business utility bills, business lease agreements, business insurance agreements, personal utility bills, business tax returns, bank statements, and letters from banks for loans that the SBA streamlined to not require such documentation.[55]

---

[54]      u/offizstorz,          Spoildtcangel,          e2johnson,          Ornery_Arm8176, InformationShort660, and Revolutionary-Row845*, Original Post and Comments on CLASS ACTION LAWSUIT AGAINST KSERVICING/KABBAGE for PPP LOAN FORGIVENESS AND DENIAL*, REDDIT, available at https://www.reddit.com/r/EIDLPPP/comments/ql2hpd/class_action_lawsuit_agains t_kservicingkabbage/, last accessed March 23, 2020. Several representative Plaintiffs experienced this practice firsthand. *See, infra,* ¶¶ 156, 172 & 186.

[55]      rebelmantn, Wrong_Combination_17, Comments on *CLASS ACTION LAWSUIT AGAINST KSERVICING/KABBAGE for PPP LOAN FORGIVENESS AND DENIAL,* REDDIT, available at https://www.reddit.com/r/EIDLPPP/comments/ql2hpd/class_action_lawsuit_agains t_kservicingkabbage/, last accessed March 23, 2022.

125.    At times the same unnecessary documentation has been "requested on more than 10 separate occasions" from the same borrower, if not more.[56]

126.    K Servicing has refused to work in good faith with borrowers to allow them to correct information that may have been wrongly reported due to the failings of its own software, instead telling a borrower that a correction could not be made one day after information was submitted and wrongly processed by its software, despite SBA regulations mandating PPP lenders work in good faith with borrowers through the forgiveness application process.[57]

- ***Refusing to participate into the SBA's Direct Borrower Forgiveness Portal, despite its knowledge of its own incompetence and technical shortcomings.***

127.    Despite boasting about its technology for the purposes of processing initial PPP applications, Kabbage has experienced extreme difficulties with its loan forgiveness processing software, causing it to eliminate its existing loan forgiveness application processing platform multiple times, forcing borrowers to start the process over from scratch.[58]

---

[56]    *Id.*

[57]    South-Apple-7694, Comment on *CLASS ACTION LAWSUIT AGAINST KSERVICING/KABBAGE for PPP LOAN FORGIVENESS AND DENIAL,* REDDIT, available at https://www.reddit.com/r/EIDLPPP/comments/ql2hpd/class_action_lawsuit_against_kservicingkabbage/, last accessed March 23, 2022.

[58]    Wrong_Combination_17, Comment on *CLASS ACTION LAWSUIT AGAINST KSERVICING/KABBAGE for PPP LOAN FORGIVENESS AND DENIAL*, REDDIT, available                                                                                                        at

128.   Customers have repeatedly reported to K Servicing that its online dashboard is not working and they are unable to submit requested (albeit unnecessary, per SBA regulations) documents as part of the forgiveness process.

129.   Despite knowledge of its own technology's shortcomings, Kabbage has refused to opt-in to the SBA's streamlined loan application forgiveness portal for loans of $150,000 or less—for which the vast majority of Kabbage-issued loans would qualify.[59]

130.   One borrower reported in June of 2021: "I applied back in January and they ignored my application before shutting down the whole portal for the rest of the year!"[60]

131.   Another borrower reported in August of 2021: "KServicing opened a portal last Jan. and I applied but they closed it and said I would have to re-apply. Then they opened one with Biz2Credit in June and I sent in my applications again.

---

https://www.reddit.com/r/EIDLPPP/comments/ql2hpd/class_action_lawsuit_against_kservicingkabbage/, last accessed March 23, 2022.
[59]    Sweet_Composer2437 and Rich-Narwhal2100, Comments on *CLASS ACTION LAWSUIT AGAINST KSERVICING/KABBAGE for PPP LOAN FORGIVENESS AND DENIAL*, REDDIT, available at https://www.reddit.com/r/EIDLPPP/comments/ql2hpd/class_action_lawsuit_against_kservicingkabbage/, last accessed March 23, 2022.
[60]    biowiz, *Anyone Received an Email from KServicing about PPP1 Forgiveness Application?*, REDDIT, available at https://old.reddit.com/r/EIDLPPP/comments/nz9mtp/anyone_received_an_email_from_kservicing_about, last accessed March 23, 2022.

It closed too and explained I would have to apply when the get their new site open. Now they claim they are close to having a new forgiveness portal, but they can't tell me when or where."[61]

132.  Still, another borrower stated in November of 2021: "August 2021 - After many calls, finally received Kservicing email stating that I could apply for PPP First Draw Loan forgiveness. Kservicing Portal allowed me to complete and Docusign Form 3508S. Sept 2021 - No response. Portal says forgiveness platform is launching soon. Called forgiveness hotline and was assured that I'd receive an email soon. They said they've ha[d] technical issues. Oct 2021 - No response. Portal says forgiveness platform is launching soon. Called forgiveness hotline and was assured that I'd receive an email soon. They said they've ha[d] technical issues. Nov 2021 - No response. Portal says forgiveness platform is launching soon. Called forgiveness hotline and was assured that I'd receive an email soon. They said they've ha[d] technical issues. I'm very worried as it says I have to start making payments in December. It sure seems like this is some sort of scam."

---

[61]    *Deadline to Get Forgiveness About to Expire – K Servicing*, available at https://www.socialgrep.com/search?query=kservicing, last accessed March 23, 2022.

133.    Despite opening and closing its own portal multiple times due to technical difficulties, K Servicing inexplicably *refused* to participate in the SBA's streamlined forgiveness application portal.

134.    To date, over 1,400 lenders have opted into this portal in order to assist their small business customers in obtaining the relief they are entitled to.[62]

- ***Sending borrowers incorrect bills and past due statements to intimidate them into making payments on loans that should be forgiven or are in the process of forgiveness review.***

135.    One customer relayed in early 2022: "I tried to apply for loan forgiveness on their website in March 2021, but they announced that they would use a different application. I have been waiting for months for that link to be sent to my email, but I have received none, unfortunately."[63]

136.    The customer's attempt to access K Servicing's portal was futile: "I found and tried to use the link https://kservicingforgiveness.biz2x.com/login, but it

---

[62]    *See* SMALL BUSINESS ASSOCIATION, *PPP lenders participating in direct forgiveness* (Effective September 23, 2021), downloadable list available at https://www.sba.gov/document/support-ppp-lenders-participating-direct-forgiveness, last accessed March 23, 2022.

[63]    Capable-Ad90, Post *KSERVICING/KABBAGE 1st Payment is dues soon and PPP LOAN FORGIVENESS is nowhere to be found… PLEASE HELP,* REDDIT, available                                                                                                        at https://old.reddit.com/r/EIDLPPP/comments/r1nome/kservicingkabbage_1st_payment_is_dues_soon_and/, last accessed March 23, 2022.

did not work. I have made numerous calls, but they all told me to wait and they are "trying" their "best."[64]

137.   Yet, after 9 months of attempted contact and not hearing back from K Servicing regarding how to apply for forgiveness, the customer received a notification that payment on their loan was due: "In conclusion, my payment is due this month, and I have not received an email about the loan forgiveness application. Could anyone please give me any advice about what I should do? Should I make the first payment?"[65]

- *Attempting (sometimes successfully) to collect on loans that should be forgiven.*

138.   K Servicing has wrongfully attempted to collect on loans that should be forgiven, but for its incompetency in handling the loan forgiveness application process.

139.   Some customers made payments upwards of thousands of dollars because K Servicing told them they were required to do so, until K Servicing later posted a statement on its website stating the *actual* SBA policy that payments are deferred until a forgiveness application is processed.[66]

---

[64]     *Id*.

[65]     *Id*.

[66]     Ornery_Arm8176, Comment on *CLASS ACTION LAWSUIT AGAINST KSERVICING/KABBAGE for PPP LOAN FORGIVENESS AND DENIAL*, REDDIT, available                                                                                          at

140.   While a few customers that made these incorrect payments have been able to recoup some of the funds illegally obtained by Kabbage,[67] others have not.

141.   As time passes, more and more borrowers are in danger of falling prey to Kabbage's collection tactics, feeling they must make payments to avoid long-term consequences to their credit.[68]

## CLASS REPRESENTATIVE EXPERIENCES

### A.    Jason Carr

142.   Plaintiff Jason Carr is a resident and citizen of Forsyth County, North Carolina.

143.   On July 15, 2020, Plaintiff Carr applied for a $17,973.00 PPP loan through Kabbage.

144.   At the time he applied, Carr submitted all required documentation including his tax returns, 1099s, bank statements, and a copy of voided checks, among other items.

---

https://www.reddit.com/r/EIDLPPP/comments/ql2hpd/class_action_lawsuit_against_kservicingkabbage/, last accessed March 23, 2022.

[67]    *See* Group Ex. A, Wieder, *Unforgiven: Two Years later, small businesses still waiting for promised PPP loan forgiveness*, detailing a customer who repaid $3500 of his $14,000 PPP loan while he was in the middle of the forgiveness application review process.

[68]    *See, e.g.*, Group Ex. A, *Small Businesses Still Face $28 Billion of Unforgiven PPP Loans, That lingering debt is creating a burden for the smallest businesses, including many run by minority entrpreneurs*, Bloomberg Equity Capital, Amy Yee & Andre Tartar (Feb. 17, 2022).

145.   On July 16, 2020, Carr's PPP loan application was approved in the amount of $17,973.00.[69]

146.   On August 16, 2021, several months after other servicers were accepting and processing forgiveness applications, Kabbage informed Carr that he could apply for loan forgiveness.

147.   Carr applied for forgiveness of his PPP Loan on August 19, 2021.

148.   The 60-day window for K Servicing to make a determination regarding Carr's forgiveness passed in October 2021.

149.   Carr did not hear anything regarding his loan forgiveness application from K Servicing until December of 2021.[70]

150.   According to Customers Bank, Carr's application was "prompted for additional review" whereupon K Servicing, on or about December 23, 2021, requested Carr to provide the following information: (i) Color copy of voided check; (ii) Business utility bills; (iii) Business lease agreement; (iv) Business tax returns; (v) Previous three month bank statements; (vi) Bank letter and (vii) IRS transcript.

---

[69]   *See* "PPP Loan Data – Jason Russell Carr, Lewsville, NC," available at https://www.federalpay.org/paycheck-protection-program/jason-russell-carr-lewisville-nc, last accessed March 23, 2022.

[70]   Notably, interest accrues on PPP loans from the date of funding so the delay in processing forgiveness applications has additional negative consequences for those borrowers who are ultimately denied forgiveness.

151.   Carr is an independent contractor, and he therefore qualifies to apply for forgiveness using the 3508S short form, which does not require any forgiveness documentation *unless requested from SBA*.

152.   K Servicing persisted in its attempts to force Carr to provide unnecessary (and, in some instances, non-existent) documentation.

153.   For example, on December 27, 2021, K Servicing requested Carr to provide the following information: (i) Color copy of voided checks; (ii) Personal utility bills (*e.g.*, electric, gas, water) ; (iii) Previous three month bank statements; (iv) IRS EIN Documents and (v) Personal Lease Agreement.

154.   In response, Carr informed K Servicing that he "has no personal leases, [and that he is] an independent contractor with no EIN document."

155.   Undaunted, K Servicing continued in its efforts to collect unnecessary and non-existent documentation and ultimately, on December 29, 2021, K Servicing declined Carr's forgiveness application.[71]

156.   After denying Carr's application, K Servicing then sent Carr a forgiveness application with the forgiveness amount pre-populated as "$0.00," meaning that if Carr signed that document he would not be requesting forgiveness of any amount of his PPP loan.

---

[71]   Plaintiff Carr could not appeal K Servicing's denial of his forgiveness application because only a determination by the SBA can be appealed, not one made by a servicer of a PPP loan.

157.   Carr did not sign the pre-populated K Servicing PPP loan forgiveness form.

158.   According to federalpay.org, the current status of Carr's $17,973 PPP loan is "ongoing."

159.   To make matters worse, in addition to attempting to collecting unnecessary documentation multiple times (which ostensibly re-started its 60-day clock under SBA guidelines) and then unjustly denying his forgiveness application, K Servicing has initiated collection efforts against Carr:

Dear Jason,

As previously indicated, your PPP Cares Act loan account is in breach of the SBA Note that you executed upon receipt of your PPP loan. As of today, your PPP loan account is two (2) payments past due.

Please note that if this loan is not repaid in full, the loan will be assigned to the SBA for the SBA to undertake its own collection activity, which can include referral of the loan to the Department of Treasury for further collection efforts.

Please log into your account to pay the past due amount immediately.

If you have filed an appeal of your Forgiveness decision, please notify us at pppforgiveness@kservicing.com.

Regards,

The KServicing Team

Current Balance: $18,258.53

Total Due: $1,284.62

Past Due: $853.01

Make a payment

**B.     Vicki LeMaster**

160.   Plaintiff Vicki LeMaster is a resident of Miami-Dade County, Florida.

161.   Plaintiff LeMaster applied for and received a modest $3,000 PPP Loan in May of 2020.

162.   Further to the terms of the PPP program, the loan would be forgiven if the funds were used for approved purposes, like rent or payroll.

163.   As detailed in the Miami Herald article entitled "*Unforgiven: Two years later, small businesses still waiting for promised PPP loan forgiveness,*" the process of obtaining forgiveness of LeMaster's loan has been incredibly flawed:

> While it took just hours for LeMaster, who is an independent contractor, to get approved by Kabbage for her loan, **the lender is now asking for the money back and her application for forgiveness has still not been approved seven months later**.  She said she's spent hundreds of hours on the phone and replied to numerous emails asking her to resubmit documents and paperwork that she had already provided.  Calls to the SBA for help got her nowhere.[72]

C.   **Edward Ford        Services LLC**

164.   Plaintiff Edward Ford Services LLC is a Michigan Limited Liability Company, with its principal address in Canton, Michigan.

165.   On or about July 12, 2020, Plaintiff Edward Ford Services LLC was approved for a PPP loan in the amount of $15,617.

166.   In or about December of 2020, Plaintiff Edward Ford Services LLC applied for forgiveness with K Servicing for its PPP loan in the amount of $15,617.

---

[72]     Group Ex. A, Wieder, *Unforgiven: Two Years later, small businesses still waiting for promised PPP loan forgiveness.*

167.    In or about January 2021, Plaintiff Edward Ford Services LLC received various communications from K Servicing requesting it to provide additional, unnecessary and oftentimes non-existent documents.

168.    Through Dejuan Ford, Plaintiff Edward Ford Services LLC attempted to contact customer service at K Servicing to discuss the fact that K Servicing kept requesting previously provided documents or documents that were not applicable to the borrower.

169.    Plaintiff Edward Ford Services LLC was informed by K Servicing, at that time, given the pendency of Round 2 of PPP loans, that all forgiveness applications were on hold.

170.    Plaintiff Edward Ford Services LLC was likewise informed that K Servicing was migrating its system to a new portal (whereupon he would have to re-apply).

171.    In early November of 2021, Plaintiff Edward Ford Services LLC received an email from K Servicing informing that its forgiveness loan application was denied.

172.    At or about that same time (November 2021), Plaintiff Edward Ford Services LLC received another forgiveness loan application from K Servicing; however, this loan application pre-populated the amount to be forgiven loan amount to "$0.00."

173.   In November and December 2021, Plaintiff Edward Ford Services LLC, by and through Dejuan Ford, attempted to get any clarity regarding this new application.

174.   Mr. Ford was informed that he should just sign that loan forgiveness application since it was up to the SBA in any event.

175.   Despite the fact that Mr. Ford signed that loan forgiveness application (and despite the fact that he was seeking forgiveness of the full loan amount), K Servicing nonetheless sent several additional emails over the following months requesting Mr. Ford to sign the same forgiveness application.

176.   As recently as March 1, 2022, Plaintiff Edward Ford Services LLC has received communications from K Servicing requesting that Mr. Ford complete the loan forgiveness application (which Mr. Ford completed and submitted on behalf of Plaintiff Edward Ford Services LLC in December of 2020).

177.   K Servicing is now attempting to collect on the PPP Loan, representing that the first payment is due on or before March 15, 2022.

**D.     Carlton Morgan**

178.   Plaintiff Carlton Morgan is a resident of Los Angeles County, California.

179.    On July 5, 2020, Morgan was approved for a PPP Loan in the amount of $8,125.[73]

180.    In or about March 2021, Morgan applied for forgiveness using Kabbage's "Core Portal."

181.    Plaintiff Morgan had to reach out and contact customer services representatives in order to find out any information regarding his forgiveness applications.

182.    In the instances where he was able to connect with a live person, they informed him that Kabbage was not processing any forgiveness applications because of anticipated additional guidance from the SBA and/or that Kabbage was transitioning to a new portal from biz2credit and that would be operational "shortly."

183.    Eventually the new Kabbage (biz2credit) portal was operational and Morgan re-applied for forgiveness in or about October of 2021.

184.    While the application itself was straightforward, the "follow-up" from Kabbage/K Servicing to collect documents not required by SBA was relentless and eventually resulted in the supposed denial of his forgiveness application.

---

[73]    *See* "PPP Loan Data – Carlton Morgan, Los Angeles, CA," available at https://www.federalpay.org/paycheck-protection-program/carlton-morgan-los-angeles-ca, last accessed March 23, 2022.

185.   On or about December 20, 2021, Plaintiff Morgan received an email from K Servicing informing him that his forgiveness application had been denied because it had been "unable to verify" the information provided in his application:



186.   Also, on or about December 20, 2021, Plaintiff Morgan then received a second email from K Servicing containing a pre-populated forgiveness application with the amount of the forgiveness request set to "$0.00."

187.   Plaintiff Morgan has provided the same documentation multiple times.

188.   Plaintiff Morgan was (and continues to seek) seeking forgiveness of the entire amount of his PPP Loan of $8,125.

189.   Despite the fact that SBA guidelines specify that borrowers do not owe any payments on PPP Loans unless and until a decision on a forgiveness request is rendered by the SBA, K Servicing is attempting to collect on a non-existent debt:

Dear Carlton,

Your PPP Cares Act Loan is past due. This failure to pay your scheduled repayment amount when due has resulted in a breach of the SBA Note you executed when you received your PPP Loan. Your account has been sent to our collections department. Escalated collections activity has begun, of which you may already have been notified.

Please note that if this loan is not repaid in full, the loan will be assigned to the SBA for the SBA to undertake its own collection activity, which can include referral of the loan to the Department of Treasury for further collection efforts.

Please log into your account today and make a payment.

If you have filed an appeal of your Forgiveness decision, please notify us at pppforgiveness@kservicing.com.

Regards,

The KServicing Team

190.   Even more perplexing is the fact that Plaintiff Morgan has received even more communications from K Servicing—*after* notifying him that his account is past due and has been sent to collections—indicating that they are still trying to review his loan for forgiveness:



191.   To recap, at this time, K Servicing has simultaneously (i) told Plaintiff Morgan that they are unable to verify his information and that his loan is denied, (ii) sent him an altered loan forgiveness document, (iii) sent him a past-due notice in an effort to illegally collect on a debt that should not actually be due and (iv) told him that they are still requesting documents in order to process his forgiveness application.  All the while, the funder of his loan (Customer's Bank) is saying that he should be able to receive forgiveness for his loan via the SBA Direct Borrower Forgiveness Portal.  But alas K Servicing will not let him nor will it actually process his forbearance application.

192.   As a result, Plaintiff Morgan has spent hundreds of hours on the phone and emailing K Servicing, lodging complaints with the BBB, reaching out to the SBA and Customer's Bank, all in an attempt to get K Servicing to process his application for forgiveness of his $8,125 PPP Loan.

**D.    365 Sun LLC**

193.   Plaintiff 365 Sun LLC is a Florida Limited Liability Company, with its principal place of business in Palmetto, Florida.

194.   On or about May 1, 2020, Plaintiff 365 Sun was approved for a PPP loan in the amount of $7,298.

195.   In or about December of 2020, Plaintiff 365 Sun applied for forgiveness with K Servicing for its PPP loan in the amount of $7,298.

196.   On January 12, 2021, Plaintiff 365 Sun received an email from K Servicing informing that its "loan forgiveness application is now being reviewed."

197.   Thereafter, on March 2, 2021, Plaintiff 365 Sun received an email from K Servicing stating that its loan forgiveness application had been reviewed and verified forgiveness amount of $7,298.

198.   Despite these acknowledgements and the fact that Plaintiff Sun 365 provided all documentation in connection with its forgiveness application in December of 2020, K Servicing continues to request previously provided or, in some cases, non-existent documentation.

199.  K Servicing maintains that it was migrating all borrowers and forgiveness applications to a new (biz2credit) platform but then it waited several months before reaching out to Plaintiff 365 Sun regarding its long-pending application.

200.  After numerous calls, K Servicing informed Plaintiff 365 Sun not to worry and that it should continue to wait while the new platform becomes operational.

201.  Several months later, K Servicing then informs Plaintiff 365 Sun that it is past due on its PPP loan.

202.  Unbelievably, in or about March of 2022, K Servicing sent Plaintiff 365 Sun an email with steps to begin the application for forgiveness process but true to form the link included in the email did not allow Plaintiff 365 Sun to access K Servicing's portal.

203.  K Servicing is attempting to collect on Plaintiff 365 Sun's PPP Loan despite the fact that it has a long-pending forgiveness application.

**F.    Candice Worthy**

204.  Plaintiff Candice Worthy is a resident and citizen of Chatham County, Georgia.

205.   On June 28, 2020, Worthy was approved for a PPP Loan in the amount of $10,000.[74]

206.   In or about December 2020, Plaintiff Worthy initially applied for forgiveness for her PPP Loan.[75]

207.   In or about January 2021, Plaintiff Worthy re-applied for forgiveness for her PPP Loan.

208.   Thereafter, Plaintiff Worthy was told to wait while the K Servicing portal was switched to the biz2credit portal and that she would be sent a link when it was operational and she could continue with her forgiveness application.

209.   Despite the SBA's guidelines regarding PPP Loans under $150,000 Plaintiff Worthy continues to receive communications from K Servicing's verification team requesting her to "upload documents."

210.   Plaintiff Worthy, a self-employed independent contractor, has provided all pertinent documentation numerous times.

---

[74]    *See* "PPP Loan Data – Candice Worthy, Savannah, GA," available at https://www.federalpay.org/paycheck-protection-program/candice-worthy-savannah-ga, last accessed March 23, 2022.

[75]    Notably, Plaintiff Worthy applied for and received forgiveness for her second PPP Loan without delay. *See* "PPP Loan Data – Candice Worthy, Savannah, GA," available at https://www.federalpay.org/paycheck-protection-program/candice-worthy-savannah-ga, last accessed March 23, 2022.

211.   Plaintiff Worthy has spent numerous hours on the phone and emailing K Servicing attempting to force them to process her loan forgiveness application, not to mention additional time spent working with the Better Business Bureau ("BBB") in an attempt to get K Servicing to comply with its obligations under the PPP and the SBA guidelines.

212.   Plaintiff Worthy has received emails from K Servicing requesting payment on her PPP Loan despite the fact that SBA guidelines specify that borrowers do not owe any payments on PPP Loans unless and until a decision on a forgiveness request is rendered.

## CLASS ALLEGATIONS

213.   Plaintiffs bring this complaint on behalf of themselves and all others similarly situated under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

214.   The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> All borrowers of PPP loans in the amount of $150,000 or less serviced by K Servicing for which the borrower has applied for but not received forgiveness of the entire amount of the PPP loan (the "Nationwide Class").

215.   In addition, Plaintiffs LeMaster and 365 Sun LLC seek to represent the following Florida Sub-Class:

> All borrowers that are domiciled in the State of Florida with PPP loans in the amount of $150,000 or less serviced

by K Servicing for which the borrower has applied for but
not received forgiveness (the "Florida Sub-Class").

216.    In addition, Plaintiff Worthy seeks to represent the following Georgia

Sub-Class:

> All borrowers that are domiciled in the State of Georgia
> with PPP loans in the amount of $150,000 or less serviced
> by K Servicing for which the borrower has applied for but
> not received forgiveness (the "Georgia Sub-Class").

217.    In addition, Plaintiff Morgan seeks to represent the following California

Sub-Class:

> All borrowers that are domiciled in the State of California
> with PPP loans in the amount of $150,000 or less serviced
> by K Servicing for which the borrower has applied for but
> not received forgiveness (the "California Sub-Class").

218.    In addition, Plaintiff Carr seeks to represent the following North

Carolina Sub-Class:

> All borrowers that are domiciled in the North Carolina
> with PPP loans in the amount of $150,000 or less serviced
> by K Servicing for which the borrower has applied for but
> not received forgiveness (the "North Carolina Sub-
> Class").

219.    In addition, Plaintiff Edward Ford Services LLC seeks to represent the

following Michigan Sub-Class:

> All borrowers that are domiciled in the State of Michigan
> with PPP loans in the amount of $150,000 or less serviced
> by K Servicing for which the borrower has applied for but
> not received forgiveness (the "Michigan Sub-Class").

220.   Excluded from the Classes and Sub-Classes are Defendant's officers, directors and employees; the judicial officers and associated court staff assigned to this case and the immediate family members of such officers and staff.

221.   **Numerosity**:  The exact number of members of the Classes and Sub-Classes is unknown and is not available to Plaintiffs at this time;  but, consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Based on publicly available documents, each of the Classes likely numbers in the thousands or more; recent media reports note that "as of early January [2022], there were 349,372 unforgiven loans and another 380,000 that were partially forgiven."[76]    Class members may be identified through objective means, notably, Defendant's records.

222.   **Commonality and Predominance.**  Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s commonality and predominance requirements, there are many questions of law and fact common to the claims of Plaintiffs and the other Class members, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Classes include, without limitation, the following:

---

[76]    *See Small Businesses Still Face $28 Billion of Unforgiven PPP Loans, That lingering debt is creating a burden for the smallest businesses, including many run by minority entrepreneurs*, BLOOMBERG EQUALITY CAPITAL, Amy Yee & Andre Tartar (Feb. 17, 2022).

    A.    Whether K Servicing negligently or intentionally failed to timely process thousands of PPP Loan forgiveness applications;

    B.    Whether K Servicing's actions or inactions violated the consumer protection statutes invoked herein;

    C.    Whether Plaintiffs, Class members, and Sub-Class members were damaged by K Servicing's conduct and, if so, the appropriate amount of such damages;

    D.    Whether, because of K Servicing's misconduct, Plaintiffs, Class Members, and Sub-Class members are entitled to declaratory relief and, if so, the nature of such relief.

223.  **Typicality:**  Consistent with Fed. R. Civ. P. 23(a)(3), the representative Plaintiffs' claims are typical of the claims of the other members of the Classes and Sub-Classes.  Plaintiffs and members of the Classes and Sub-Classes sustained damages as a result of Defendant's wrongful conduct in failing to timely process forgiveness applications for PPP Loans under $150,000.

224.  **Adequate Representation:**  Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs have and will continue to fairly and adequately represents the interests of the Classes and Sub-Classes, and have retained counsel competent and experienced in complex litigation and class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and Sub-Classes, and they have the resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes and Sub-Classes.

225. **Superiority**: Consistent with Fed. R. Civ. P 23(b)(3), class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy. Individual litigation by each Class member would strain the court system because of the numerous members of the Class. This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because litigation of the claims of all Class members and Sub-Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class members and Sub-Class members are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual lawsuits. Even if members of the Classes and Sub-Classes themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

226.   K Servicing has, or has access to, address and/or other contact information for the Class members and Sub-Class members, which may be used to provide notice of the pendency of this action.

227.   **Injunctive and Declaratory Relief**.  Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the class as a whole.

## GEORGIA LAW SHOULD APPLY TO PLAINTIFFS AND ALL CLASSES AS A WHOLE, WITH THE EXCEPTION OF THE SPECIFIED SUB-CLASSES

228.   The State of Georgia has a significant interest in regulating the conduct of businesses operating within its borders.

229.   Georgia, which seeks to protect the rights and interests of Georgia and all residents and citizens of the United States against a company headquartered and doing business in Georgia, has a greater interest in the claims of Plaintiffs and the Classes than any other state and is most intimately concerned with the claims and outcome of this litigation.

230.   The principal place of business and headquarters of Kabbage/ K Servicing, located at 925B Peachtree Street NE Suite 383, Atlanta, GA, 30309, is the "nerve center" of its business activities – the place where its high-level officers

direct, control and coordinate Defendant's activities, including major policy, financial and legal decisions.

231.    Defendant's actions and corporate decisions surrounding the allegations made in the Complaint were made from and in Georgia.

232.    Defendant's breaches of duty to Plaintiffs and Class members emanated from Georgia.

233.    Application of Georgia law to the Classes with respect to Plaintiffs' and the Classes' claims is neither arbitrary nor fundamentally unfair because Georgia has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Classes.

234.    Moreover, K Servicing's Terms of Service state that "[t]hese Terms of Service shall be governed by the internal substantive laws of the State of Georgia, without respect to its conflict of laws principles.  Any claim or dispute between you and Kabbage, Inc. that arises in whole or in part from the Website or the Services shall be decided exclusively by a court of competent jurisdiction located in Atlanta, Georgia."[77]

---

[77]    KABBAGE, "Kabbage, Inc. Terms of Service," available at https://www.kservicing.com/legal/tos/, last accessed March 21, 2022.

235.   Under Georgia's choice of law principles, which are applicable to this action, the common law of Georgia applies to the nationwide common law claims of all Class members.

236.   Additionally, given Georgia's significant interest in regulating the conduct of businesses operating within its borders, and that Georgia has the most significant relationship to Defendants, as they are headquartered in Georgia, and their executives and officers are located and made decisions which have given rise to the allegations and claims asserted herein, there is no conflict in applying Georgia law to non-resident consumers such as Plaintiffs and the Classes.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Declaratory Judgment Further to the Declaratory Judgment Act, 28 U.S.C. § 2201**
**And Injunctive Relief**
**(On behalf of all Plaintiffs and the Nationwide Class)**

237.   Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

238.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described herein.

239.   An actual controversy has arisen in light of the fact that the SBA has issued an Interim Final Rule streamlining the forgiveness application process for PPP Loans under $150,000 should be forgiven and as a result of K Servicing's unwillingness and/or inability to process Plaintiffs' and the Class members' PPP Loan forgiveness applications, as detailed herein.

240.   Plaintiffs maintain that K Servicing's processing of its borrower clients' PPP loan forgiveness applications for loans under $150,000 remains inadequate.

241.   K Servicing maintains that it is doing everything it can to support its small business clients.

242.   Plaintiffs and the Class members continue to suffer injury as a result of K Servicing's inability to timely and accurately process the loan applications.

243.   Plaintiffs and the Nationwide Class members seek a declaration, in accordance with the SBA regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that:

> a. Defendant is obligated to review and to process loan forgiveness applications in good faith and within the 60-day time frame according to SBA regulations;
>
> b. Defendant is obligated to process PPP loan forgiveness applications for loans equal to or less than $150,000 via Form

3508S, according to SBA regulations; and,

c. that Defendants is obligated to process PPP loan forgiveness applications and may not require any documentation other than that explicitly required by SBA regulations.

244.   This Court also should issue corresponding prospective injunctive relief requiring K Servicing to abide by SBA regulations for processing loans of $150,000 and under, including, but not limited to, immediately ceasing to ask for documentation that is not required by SBA regulations and allowing borrowers to utilize the streamlined application process.  If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy. Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable, and are not recoverable (time and effort), and they will be forced to bring multiple lawsuits to rectify the same conduct.

245.   The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to K Servicing if an injunction is issued as the "cost" to K Servicing of complying with an injunction by following SBA guidelines is minimal, and K Servicing has a pre-existing legal obligation to employ such measures.

246.   Ironically, if K Servicing had elected to participate in the SBA's Direct Borrower Forgiveness Portal, then many of the issues complaint about herein could

have been avoided. The "burden" of compelling K Servicing to comply with SBA guidelines and to timely process loan forgiveness applications is minimal.

247. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by allowing many borrowers of PPP loans under $150,000 to receive forgiveness of those loans, thus eliminating the additional injuries that would result to Plaintiffs and consumers in the future.

## SECOND CAUSE OF ACTION

### Unjust Enrichment
### (On behalf of Plaintiffs & the Nationwide Class)

248. Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

249. Unjust enrichment, or restitution, may be alleged where a defendant unjustly obtains and retains a benefit to the plaintiff's detriment, where such retention violates fundamental principles of equity, justice and good conscience.

250. Here, Defendant has obtained hundreds of millions of dollars in benefits in the form of PPP loan origination fees not to mention, on information and belief, additional, undisclosed fees for servicing PPP loans.

251. Defendant would not have obtained this benefit but-for its small business customers (Plaintiffs and class members) that entrusted it to service their loans.

-65-

252.   Defendant has fallen short in its duties as servicers for these PPP loans and have frustrated Congressional intent to aid small businesses during a global health crisis no less.

253.   Because Defendant has been unwilling or unable to adequately service the plaintiffs' and class members loans, principles of justice, equity and good conscience demand that Defendant not be allowed to retain these fees.

254.   Accordingly, Defendant should be ordered to disgorge the portion of any and all PPP origination fees that it has retained.

### THIRD CAUSE OF ACTION

### Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL")
### (On Behalf of Plaintiff Morgan & the California Sub-Class)

255.   Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

256.   Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code, §§ 17200, *et seq*.

257.   The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices…"

258.   Defendant violated the "unlawful" prong of the UCL by violating California's Rosenthal Act, Cal. Civ. Code §§ 1788, *et seq.*, and the federal Fair Debt Collections Practice Act, 15 U.S.C. §§ 1692, *et seq*.

259.   Defendant's conduct, described herein, violated the "unfair" prong of the UCL because Defendant's conduct was immoral, unethical, unscrupulous or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

260.   Defendant's conduct with respect to servicing the PPP loans it disbursed, including but not limited to its incompetence throughout the loan forgiveness application process for its borrowers, was unfair because it violates public policy, in that the very victims of its services were the small businesses that the SBA and Congress endeavored to help through PPP emergency loans.

261.   Defendant's conduct with respect to servicing the PPP loans it disbursed, including but not limited to its incompetence throughout the loan forgiveness application process for its borrowers, was unfair because the consumer injuries are substantial, not outweighed by any benefits to consumers or competition, and none of Defendant's borrowers could have reasonably avoided falling victim to Defendant's failures.

262.   Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL.

263.   A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

264.   The objective reasonable consumer would have been misled or deceived by Defendant's statements and representations regarding its abilities to carry out its obligations as a service of PPP loans and to process loan forgiveness applications in good faith, according to SBA regulations, and within the mandated time period contained therein.

265.   Defendant profited from its misleading statements by inducing prospective borrowers to choose it as a loan disburser and servicer, only later to be subjected to stress and unfair treatment throughout the loan forgiveness application process.

266.   Defendant's conduct caused substantial injury to Plaintiff Morgan, and the other California Sub-Class Members. Plaintiffs have suffered injury in fact as a result of Defendant's unlawful, unfair and fraudulent conduct.

267.   Plaintiff Morgan and California Sub-Class Members were damaged because they have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including but not limited to wasting hundreds and hundreds and hours of time, and in some cases precious financial resource, with K Servicing's "customer service," reapplying multiple times after K Servicing switched application portals, being asked to provide documentation above and beyond what the SBA's regulations actually require, being asked to provide documentation that they previously submitted (multiple times),

receiving documents that contain inaccurate information about their financing and accounts, and being asked to make payments on loans that should have been forgiven long ago.

268. In accordance with Bus. & Prof. Code § 17203, Plaintiff Morgan and the California Sub-Class seek an order enjoining Defendant from continuing to violate SBA regulations on processing loan forgiveness applications by refusing to adhere to the 60-day timeline and repeatedly requesting unnecessary documentation.

### FOURTH CAUSE OF ACTION

**Georgia Uniform Deceptive Trade Practices Act**
**Ga. Code Ann. §§ 10-1-370,** *et seq.*
**(On behalf of Plaintiff Worthy & the Nationwide Sub-Class)**

269. Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

270. Defendant, Plaintiff Worthy and the Georgia Sub-Class Members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

271. Defendant has engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code § 110-1-372(a), including:

- Representing that goods or services have characteristics that they do not have;

- Representing that goods or services are of a particular standard, quality, or grade if they are of another;

- Advertising goods or services with intent not to sell them as advertised and

- Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

272. Defendant's deceptive trade practices include:

- Representing on its website under a section titled "Paycheck Protection Program (PPP) Loan Forgiveness" that customers will "enjoy the same great service and security you've come to expect with your line of credit – just through our new website."[78];

- Representing on its website, under a FAQ "When will I receive my forgiveness decision?", that "K Servicing has 60 days from receipt of a complete loan forgiveness application to issue a recommendation to the SBA, and the SBA is required to issue a decision within 90 days after the lender issues its recommendation to the SBA," indicating to customers that their loan forgiveness decisions would be finalized within 150 days.[79];

- Representing the loan forgiveness timeline with misleading visuals, including but not limited to:



---

[78]     Kabbage, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at https://www.kservicing.com/ppp-loan-forgiveness/, last accessed March 23, 2022.

[79]     Kabbage, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at https://www.kservicing.com/ppp-loan-forgiveness/, last accessed March 23, 2022.

Source: KABBAGE[80]

- Representing on its website that "borrowers with loans under $150,000 who qualify to use the new Form 3508S may not need to submit any supporting documentation," but continuing to demand thousands of customers with loans under this threshold continue submitting unnecessary documentation.[81];

- Representing on its website that only the following information was needed for loan forgiveness application, yet repeatedly requesting unnecessary documentation not included on that list, nor included in SBA regulations, from borrowers when they actually began the loan forgiveness application process:

---

[80]    KABBAGE, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at https://www.kservicing.com/ppp-loan-forgiveness/, last accessed March 23, 2022.

[81]    KABBAGE, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at https://www.kservicing.com/ppp-loan-forgiveness/, last accessed March 23, 2022.

**What do you need for your PPP Loan Forgiveness Application**

The PPP Loan Forgiveness Application is extensive and detailed, so make sure you have the following on hand:

1. Your business's legal name, DBA, trade name and business TIN (EIN, SSN)
2. Your business's address, phone, primary contact, or email address that matches the info on your loan application
3. The SBA PPP loan number assigned by your lender
4. The lender's PPP loan number
5. Your PPP loan amount
6. The number of employees at the time of your loan application
7. The number of employees at the time of your forgiveness application
8. The date you received your PPP funds from your lender or the date you received your first PPP loan disbursement
9. The EIDL advance amount if you received one
10. The EIDL application number if you applied
11. Your business's payroll schedule
12. Your covered period (either the 8-week or 24-week period after your loan was disbursed)
13. Any alternative payroll covered period, if applicable

Source: KABBAGE[82]

- Defendant edited and sent DocuSign versions of loan forgiveness applications to Plaintiffs and Class Members, with "$0.00" reported as "Requested Loan Forgiveness Amount," in an effort to induce Plaintiffs and Class Members into attesting to false information

---

[82]    KABBAGE, *How to Calculate PPP Loan Forgiveness and Apply*, available at https://www.kservicing.com/resources/how-to-calculate-ppp-loan-forgiveness-and-apply/, last accessed March 23, 2022.

about the amount of loan forgiveness they were seeking and entitled to.

273.  Defendant's representations and omissions were material because Defendant knew or had reason to believe that borrowers would rely on its instructions and timelines related to loan forgiveness applications, despite knowing or having reason to believe that these instructions and timelines were grossly inaccurate and would not be followed by Defendant.

274.  Likewise, Defendant's representations and omissions were material because Defendant knew or had reason to believe that it did not have the proper staffing and technological capacity to process a high volume of loan forgiveness applications in the time mandated by SBA regulations, yet Defendant knew borrowers would rely on Defendant's representations of itself as a competent loan disburser and servicer.

275.  Defendant intended to mislead Plaintiffs and the Georgia Sub-Class Members and induce them to rely on their misrepresentations and omissions.

276.  In the course of their business, Defendant engaged in activities with a tendency or capacity to deceive.

277.  Defendant acted intentionally, knowingly and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Worthy's and the Georgia Sub-Class Members' rights.

278.  As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff Worthy and the Georgia Sub-Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including, but not limited to, wasting hundreds and hundreds and hours of time, and in some cases precious financial resources, with K Servicing's "customer service," reapplying multiple times after K Servicing switched application portals, being asked to provide documentation above and beyond what the SBA's regulations actually require, being asked to provide documentation that they previously submitted (multiple times), receiving documents that contain inaccurate information about their financing and accounts, and being asked to make payments on loans that should have been forgiven long ago.

279.  Plaintiff Worthy and the Georgia Sub-Class Members seek all relief allowed by law including injunctive relief and reasonable attorneys' fees and costs under Ga. Code § 10-1-373.

## FIFTH CAUSE OF ACTION

### North Carolina Unfair and Deceptive Trade Practices Act
### N.C.G.S §§ 75, *et seq.*
### (On behalf of Plaintiff Jason Carr & the North Carolina Sub-Class)

280.  Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

281.   Defendant's acts and omissions as set forth herein were in or affecting commerce.

282.   As set forth herein, Defendant has violated the provisions of N.G.C.S. § 75-54, by attempting to collect a debt by fraudulent, deceptive or misleading representation.

283.   Defendant misled Carr for months on end, repeatedly requiring him to submit unnecessary paperwork.

284.   After denying Carr's application, K Servicing then fraudulently sent Carr a forgiveness application with the forgiveness amount pre-populated as "$0.00," meaning that if Carr signed that document he would not be requesting forgiveness of any amount of his PPP loan.

Thereafter, Defendant continued its deceptive practices, contacting Carr to collect on his PPP loan by emailing him to tell him his loan was in default and that multiple payments were overdue

285.   N.C.G.S. § 75-16 provides: "If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages

are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict."

286.  Defendant has committed unfair and deceptive trade practices as defined by N.G.C.S. § 75-16.

287.  Plaintiff Carr and North Carolina Sub-Class members are entitled to an award of treble damages against Defendant pursuant to N.G.C.S. § 75-16.

**SIXTH CAUSE OF ACTION**

**Michigan Consumer Protection Act ("MPCA")**
**Mich. Comp. Laws Ann. §§ 445.901,** *et seq.*
**(On behalf of Plaintiff Edward Ford Services LLC & the Michigan Sub-Class)**

288.  Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

289.  Plaintiff Edward Ford Services LLC and Defendant are "person[s]" within the meaning of § 445.902(d) of the MCPA.

290.  Defendant is engaged in "trade or commerce" within the meaning of § 445.902(g) of the MCPA via its marketing of its small business lending services.

291.  Defendant's conduct, as described above, constitutes unlawful conduct of trade or commerce within the meaning of § 445.903 of the MCPA, including, but not limited to, specifically § 445.903(e) representing its services are of a particular standard, quality, or grade if they are another; § 445.903(g) advertising or representing its service with intent not to dispose of those services as advertised or

represented; § 445.903(n) causing a probability of confusion or of misunderstanding as to the legal rights, obligations or remedies of a party to a transaction; § 445.903(o) causing a probability of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction; § 445.903(q) representing or implying its services will be provided promptly or at a specified time, or within a reasonable time, knowing or having reason to know it will not so be provided; § 445.903(v) taking or arranging for the consumer to sign a writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, knowing or having reason to know that the statement is not true.

292.   Under Section 445.911 of the MCPA, Plaintiff Edward Ford Services LLC and the Michigan Sub-Class have standing to pursue this claim because they suffered an ascertainable loss resulting from Defendant's conduct. Accordingly, Plaintiff Edward Ford Services LLC seeks damages, restitution, declaratory and injunctive relief, attorneys' fees and costs of suit on behalf of itself and the Michigan Subclass.

## SEVENTH CAUSE OF ACTION

### Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. §§ 501.201, *et seq.*
### (On behalf of Plaintiffs Vicki LeMaster & 365 Sun LLC & the Florida Sub-Class)

293.   Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

294.   Plaintiffs Vicki LeMaster and 365 Sun LLC and the Florida Sub-Class members are "consumer[s]" as defined by Fla. Stat. § 501.203.

295.   Kabbage/K Servicing advertised and offered services in Florida and engaged in commerce directly or indirectly affecting the people of Florida.

296.   K Servicing engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

297.   Defendant's deceptive trade practices include:

- Representing on its website under a section titled "Paycheck Protection Program (PPP) Loan Forgiveness" that customers will "enjoy the same great service and security you've come to expect with your line of credit – just through our new website."[83];

- Representing on its website, under a FAQ "When will I receive my forgiveness decision?", that "K Servicing has 60 days from receipt of a complete loan forgiveness application to issue a recommendation to the SBA, and the SBA is required to issue a decision within 90 days after the lender issues its recommendation to the SBA," indicating to customers that their loan forgiveness decisions would be finalized within 150 days.[84];

- Representing the loan forgiveness timeline with misleading visuals, including but not limited to:

---

[83]    Kabbage, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at  https://www.kservicing.com/ppp-loan-forgiveness/  (last accessed March 23, 2022).

[84]    Kabbage, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at  https://www.kservicing.com/ppp-loan-forgiveness/   (last accessed March 23, 2022).



Source: KABBAGE[85]

- Representing on its website that "borrowers with loans under $150,000 who qualify to use the new Form 3508S may not need to submit any supporting documentation," but continuing to demand thousands of customers with loans under this threshold continue submitting unnecessary documentation.[86];

- Representing on its website that only the following information was needed for loan forgiveness application, yet repeatedly requesting unnecessary documentation not included on that list, nor included in SBA regulations, from borrowers when they actually began the loan forgiveness application process:

---

[85]    KABBAGE, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at  https://www.kservicing.com/ppp-loan-forgiveness/   (last accessed March 23, 2022).

[86]    KABBAGE, *Paycheck Protection Program (PPP) Loan Forgiveness*, available at  https://www.kservicing.com/ppp-loan-forgiveness/ (last accessed March 23, 2022).

**What do you need for your PPP Loan Forgiveness Application**

The PPP Loan Forgiveness Application is extensive and detailed, so make sure you have the following on hand:

1. Your business's legal name, DBA, trade name and business TIN (EIN, SSN)
2. Your business's address, phone, primary contact, or email address that matches the info on your loan application
3. The SBA PPP loan number assigned by your lender
4. The lender's PPP loan number
5. Your PPP loan amount
6. The number of employees at the time of your loan application
7. The number of employees at the time of your forgiveness application
8. The date you received your PPP funds from your lender or the date you received your first PPP loan disbursement
9. The EIDL advance amount if you received one
10. The EIDL application number if you applied
11. Your business's payroll schedule
12. Your covered period (either the 8-week or 24-week period after your loan was disbursed)
13. Any alternative payroll covered period, if applicable

Source: KABBAGE[87]

- Defendant edited and sent DocuSign versions of loan forgiveness applications to Plaintiffs and Class Members, with "$0.00" reported as "Requested Loan Forgiveness Amount," in an effort to induce Plaintiffs and Class Members into attesting to false information

---

[87]    KABBAGE, *How to Calculate PPP Loan Forgiveness and Apply*, available at https://www.kservicing.com/resources/how-to-calculate-ppp-loan-forgiveness-and-apply/ (last accessed March 23, 2022).

about the amount of loan forgiveness they were seeking and entitled to.

298.  K Servicing's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy and competency of K Servicing's PPP Loan processing capabilities.

299.  Plaintiffs LeMaster and 365 Sun LLC and the Florida Sub-Class members acted reasonably in relying on K Servicing's misrepresentations and omissions, the truth of which they could not have discovered.

300.  As a direct and proximate result of the K Servicing' unconscionable, unfair and deceptive acts and practices, Plaintiffs LeMaster and 365 Sun LLC and the Florida Sub-Class Members have suffered and will continue to suffer injuries.

301.  Plaintiffs LeMaster and 365 Sun LLC and the Florida Sub-Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.211, declaratory and injunctive relief, reasonable attorneys' fees and costs under Fla. Stat. § 501.2105(1) and any other relief that is just and proper.

## EIGHTH CAUSE OF ACTION

### Violation of O.C.G.A. § 13-6-11
### (On behalf of Plaintiffs & the Nationwide Class)

302.  Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully set forth herein.

303.   Defendant through its actions alleged and described herein acted in bad faith, was stubbornly litigious, or caused Plaintiffs unnecessary trouble and expense with respect to the transaction or events underlying this litigation.

304.   As further described above, Plaintiffs and the Class have been injured and suffered losses directly attributable to Defendant's actions.

305.   Plaintiffs therefore request that their claim for recovery of expenses of litigation and attorneys' fees be submitted to the jury, and that the Court enter a Judgment awarding their expenses of litigation and attorneys' fees pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Jason Carr, Vicki LeMaster, Edward Ford Services LLC, Carlton Morgan¸ 365 Sun LLC and Candice Worthy and the Class Members respectfully request that this Court enter an order:

a)   Certifying the proposed Classes;

b)   Appointing Plaintiffs as Class Representatives for the respective classes;

c)   Appointing Plaintiffs' attorneys below as Class Counsel for the classes and Sub-Classes;

d)   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

-82-

e)    For damages in an amount to be determined by the trier of fact;

f)    For an order of restitution and all other forms of equitable, declaratory and injunctive relief as described herein;

g)    Awarding Plaintiffs reasonable attorneys' fees, costs and expenses pursuant to O.C.G.A. § 13-6-11 and as otherwise allowed by law;

h)    Awarding Plaintiffs pre- and post-judgment interest on any amounts awarded; and

i)    Granting such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs respectfully demand a trial by jury for all claims that may be so tried.

Dated: March 30, 2022

By:*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson, *Esq.*
Georgia Bar No. 725843
**The Finley Firm, P.C.**
Piedmont Center
3535 Piedmont Rd.
Building 14, Suite 230
Atlanta, GA  30305
(404) 978-6971
MGibson@thefinleyfirm.com

Shane R. Heskin, *Esq.* (*pro hac vice* admission forthcoming)

Justin E. Proper, *Esq.* (Georgia Bar # 141782)
**WHITE & WILLIAMS, LLP**
1650 Market Street, Suite 1800
Philadelphia, PA 19103
(215) 864-6329
heskins@whiteandwilliams.com

*Attorneys for Plaintiffs & the Putative Classes*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: March 30, 2022.

/s/ *MaryBeth V. Gibson*
MARYBETH V. GIBSON