**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| Jason Carr, Vicki LeMaster, Edward Ford Services LLC, Carlton Morgan¸ 365 Sun LLC and Candice Worthy, *individually and on behalf of all others similarly situated*,<br><br><br>Plaintiffs,<br><br>v.<br><br>Kabbage, Inc. d/b/a K Servicing,<br><br>Defendant. | Civil Action No.1:22-cv-01249-VMC |

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

1.    **Description of Case:**

(a) **Describe briefly the nature of this action.**

*Plaintiffs' Position:*

Defendant Kabbage, Inc. d/b/a K Servicing ("Kabbage") is a financial technology company launched in May 2011 that by March of 2020, in the midst of an unprecedented global pandemic, was on the verge of collapsing.  In order to save itself, Kabbage took advantage of the ongoing pandemic's effects on small

businesses and lobbied the United States federal government to be included in the Small Business Association ("SBA") Paycheck Protection Program ("PPP") as a lender.  Kabbage ultimately was approved as an SBA lender and processed PPP loans.  Accordingly, Kabbage gained the ability to generate millions of dollars in origination fees, revive its floundering business and make itself an attractive acquisition target.  Notably, Kabbage did not actually fund the loans; rather, it partnered with Customers Bank, Celtic Bank and Cross River Bank, which actually funded the loans.

By the end of August 2020, Kabbage had processed and (in combination with those partner bank) funded the second-largest number of PPP loans in the country. According to published reports, Kabbage received a staggering amount for helping originate these loans – somewhere in the neighborhood of $350 Million.  In fact, Kabbage made so much money in PPP loan origination fees, that American Express agreed to acquire most of Kabbage's assets for $850 million in 2021.  American Express did not acquire the PPP loan servicing arm, which was renamed "K Servicing" in an effort to make it appear like a separate entity.

Not content with its hundreds of millions of dollars in origination fees, Kabbage continues to refuse to process the forgiveness applications of its small business borrowers, in order to generate tens of millions of dollars in loan servicing

fees.[1]  The amount of servicing fees that Kabbage contends it is owed from its partner banks is substantial.  In fact, in a separate lawsuit in the Northern District of Georgia, Kabbage has represented that the various fees associated with servicing the loans for just one of its partner banks (Customers Bank) amounts to tens of millions of dollars. *See Kabbage d/b/a K Servicing Inc. v. Customers Bank*, Case No. 1:22-cv-02101-JPB (N.D. Ga. May 25, 2022), ¶ 16.  And, Customers Bank is only one of Kabbage's partner institutions – the fees at issue in the aforementioned lawsuit do not take into account those Kabbage received from Celtic Bank and Cross River Bank.

Simply put, Kabbage has an incentive to not forgive Plaintiffs' and the Class Members' loans because it—by its own admission—receives tens of millions of dollars for continuing to service these loans.  Kabbage's conflict of interest is unmistakable and its conduct in delaying forgiveness to hundreds of thousands of small business PPP borrowers in order to manufacture millions of dollars in servicing fees is reprehensible.

---

[1] To be clear, this lawsuit is not an action based on the CARES Act.  Rather, this action seeks redress for Kabbage's abject failure to adequately and timely process Plaintiffs' and the Class Members' forgiveness applications.  As detailed in the Class Action Complaint, Plaintiffs have spent months and months trying to get their loans forgiven with Kabbage, which has not timely responded to their requests.  Or, when Kabbage does bother to respond, it is merely to request documentation that has been provided numerous or that does not exist for certain plaintiffs. Kabbage does this in order to prolong the forgiveness application process so that it may collect additional millions of dollars in servicing fees.

The amount of servicing fees that Kabbage is continuing to manufacture by refusing to process forgiveness applications is staggering. Thus, it is not surprising that Kabbage elected *not* to participate in the SBA's Direct Borrower Forgiveness Portal and instead implemented its own "process" by which Plaintiffs and other borrowers' loan forgiveness is inevitably delayed so that Kabbage may continue to charge and collect servicing fees. To date, these loans remain on the books whereas if Kabbage had participated in the SBA's Direct Borrower Forgiveness Portal, the loans would have been forgiven and Plaintiffs and Class Members could have moved on with their lives and their businesses.

Operating outside the Forgiveness Portal, Kabbage has repeatedly asked customers for unnecessary documentation and information throughout the review process in order to stall the process, causing borrowers confusion, frustration, stress, anxiety and time loss. Kabbage has demanded borrowers send in articles of incorporation, certificates of organization, voided checks, business utility bills, business lease agreements, business insurance agreements, personal utility bills, business tax returns, bank statements and/or letters from banks for loans that the SBA Forgiveness Portal does not require, and—in many instances—simply do not exist.

As a result of Kabbage's conduct, Plaintiffs and the Class Members are placed in an unwinnable situation; that is, when Plaintiffs and the Class Members reach out to the SBA and Kabbage's partner banks (who actually funded the loans), they are told that these entities cannot help them and they must reach out to Kabbage as the servicer on those loans.  Then, when Plaintiffs and the Class Members reach out to Kabbage regarding their long-pending forgiveness application, they are ignored for months and months and when Kabbage does deign to respond, it does so merely to request documentation (most of which has already been provided) and to attempt to dupe unsuspecting borrowers into signing loan forgiveness applications which request that their loans not be forgiven.

Plaintiffs and the Classes are comprised of small businesses, sole proprietorships, independent contractors and self-employed individuals—the very entities that the PPP loans were meant to help—who sought small business loans serviced by the lender Kabbage, all under $150,000 and most of which are significantly smaller.  The SBA has made it clear that PPP loans of $150,000 or less should be forgiven, and yet Kabbage continues to "service" these loans because it receives millions and millions of dollars of servicing fees from its partner banks (Cross River, Celtic and Customers Bank).

Plaintiffs have incurred substantial damages as a result.  Plaintiffs filed this action against Kabbage seeking to represent a national class and various subclasses for violations of certain consumer protection statutes, unjust enrichment, declaratory judgment and injunctive relief.

***Defendant's Position:***

To alleviate the financial devastation caused by the COVID-19 pandemic, Congress passed a series of financial recovery measures, including the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 ("CARES Act"), on March 25, 2020, which was signed into law on March 27, 2020.  As part of the CARES Act, the Paycheck Protection Program ("PPP") expanded the Small Business Administration's ("SBA") Section 7(a) loan program by providing small businesses an opportunity to borrow money to cover payroll and other expenses.

As an approved lender and loan processor, Kabbage, Inc. d/b/a K Servicing ("K Servicing"), partnered with the SBA to connect small businesses to PPP loans in record time with its proprietary technology.  For example, within three months of the pandemic arriving in the United States, K Servicing assisted over 130,000 small businesses in obtaining PPP funding at an average loan of just $29,000, well below

the SBA's overall average of $113,000.[2]  In all, KServicing processed approximately $7 billion in PPP loans, providing vital support ("a much-needed emergency lifeline") to hundreds of thousands of businesses.

Plaintiffs—business owners conducting business activities—have filed the instant action based on purported violations of the CARES Act and SBA regulations. However, there is no private right of action for such alleged violations, In an attempt to circumvent this fatal defect in claims, Plaintiffs have dressed the alleged statutory violations as purported violations of state consumer protection statutes that were enacted to address individual consumer transactions (e.g. transactions that are primarily for *personal, family and/or household* purposes) and not for the type of business loan transactions alleged by Plaintiffs here.

The allegations in Plaintiffs' Complaint show that Plaintiffs' claims are not suitable for class treatment.  Moreover, Plaintiffs cannot prevail on their individual claims against KServicing for at least four independent reasons.

First, Plaintiffs cannot proceed with their claims because there is no private right of action to enforce violations of the Coronavirus Aid, Relief, and Economic

---

[2] How Kabbage saved its small business lending operation in the middle of the pandemic.   https://www.cnbc.com/2020/06/17/kabbage-turned-to-doling-out-ppp-loans-to-save-its-lending-business.html, last accessed May 31, 2022. (*See* Compl. fn. 16).

Security Act, Pub. L. 116-136 ("CARES Act") and Small Business Administration

("SBA") regulations, which seeks to enforce the CARES Act.  Regardless of how

they are styled, Plaintiffs' claims seek to hold K Servicing liable for its alleged

failure to carry out requirements of the CARES Act and SBA regulations, neither of

which provide a private right of action.  The allegations in the Complaint make clear

that all of Plaintiffs' claims arises entirely from purported CARES Act and SBA

violations. Indeed, Plaintiffs expressly cite a purported failure by KServicing to

comply with the terms of the CARES Act or SBA regulations as the basis for its

asserted state law claims.[3] Accordingly, Plaintiffs' state law claims arising from

these purported violations of federal law.

_____

[3] Count 1 seeks a Declaratory Judgment that KServicing must comply with the terms
of the CARES act. (Compl. ¶¶ 243-244.) and seeks prospective injunctive relief
requiring KServicing to abide by SBA regulations for processing loans of $150,000
and under, including, but not limited to, immediately ceasing to ask for
documentation that is not required by SBA regulations and allowing borrowers to
utilize the streamlined application process. *id.* ¶ 244. Count 2, a claim for unjust
enrichment, alleges that KServicing has "frustrated Congressional intent to aid small
businesses…" (*Id.* ¶ 252.) Count 3, a purportedly brought pursuant to the California
unfair business law, alleges that KServicing failed "to carry out its obligations as a
service of PPP loans and to process loan forgiveness applications in good faith,
according to SBA regulations, and within the mandated time period contained
therein." (*Id.* ¶ 264.) Count 4, a claim under the Georgia Deceptive Trade Practices
Act, alleges KServicing failed to "process . . . loan forgiveness applications in the
time mandated by SBA regulations. . ." (*Id.* ¶ 274.) Plaintiffs also allege that
KServicing asked for documents "beyond what the SBA's regulations actually

Second, Plaintiffs claims are governed by Georgia law and, as such, all the non-Georgia state law claims must be dismissed.  Because the provision provides that the internal and substantive laws of the state of Georgia will govern the parties dispute, Plaintiffs cannot assert claims arising under the internal laws of other states.

Third, Plaintiffs cannot adequately plead the required elements of their various state consumer protection statutes because: (1) KServicing is not a proper defendant pursuant to the statutes; (2) the transactions at issue do not provide for a cause of action under the specified statutes; (3) no notice of suit was provided; (4) the cited statutes protect consumers, not small businesses; and (5) Plaintiffs Carr, Edward Ford Services, LLC, and Morgan have failed to exhaust their administrative remedies, among other reasons.

Fourth, KServicing followed the applicable SBA guidelines, which continued to be developed and changed during the relevant time period.  KServicing denies that it breached any legal, contractual or statutory duty to Plaintiffs, unlawfully

---

require . . ." Compl. ¶ 278. Count 5, a claim under North Carolina's DTPA statute, alleges KServicing improperly handled the North Carolina Plaintiffs' loan forgiveness application[s]. Compl. ¶ 284. Count 6, a claim under Michigan's Consumer Protection Act, relies on the same purportedly wrongful conduct described above. Count 7, a claim under Florida's Unfair Trade Practices Act, alleges KServicing failed to adhere to the guidelines set forth under the SBA. Compl. ¶¶ 297 and 298.

benefitted at Plaintiffs' expense or that it caused damage to Plaintiffs and put Plaintiffs to strict proof of on its claims.

Notwithstanding the above deficiencies with Plaintiffs' claims, the claims are also unsuitable for a class action. Plaintiffs' cannot certify a class under Federal Rule of Civil Procedure 23 because, among other things, they cannot meet the requirements regarding ascertainability, numerosity, commonality, typicality or adequacy and Plaintiffs' claims do not meet any of the requirements under Rule 23(b).

    **(b)** **Summarize, in the space provided below, the facts of this case.  The summary should not be argumentative nor recite evidence.**

*Plaintiffs' Summary:*

By way of background (and in addition to the information provided above), the United States economy, and particularly its small businesses, was hard hit by the COVID-19 pandemic beginning roughly in March 2020.  The SBA PPP was enacted to provide emergency loans to small businesses.  Defendant Kabbage, in connection with its partner banks, became a key lender and loan servicer in the SBA's PPP.

Plaintiffs and putative Class Members applied for and received PPP loans serviced by Kabbage.  PPP Loans approved by Kabbage in 2020 generated hundreds of millions of dollars in origination fees.

The SBA has made it clear that PPP loans of $150,000 or less should be forgiven as swiftly as possible.  Kabbage has elected not to participate in the Small Business Administration's Direct Borrower Forgiveness Portal, a streamlined Portal for processing borrower loan forgiveness applications for all PPP loans of $150,000 or less.  The rules applying to SBA PPP lenders and servicers mandate that servicers issue a decision on a loan forgiveness application within sixty days.  Plaintiffs and the putative Class Members all applied to Kabbage for loan forgiveness more than sixty (60) days ago.  As of this date, Plaintiffs' and putative Class Members' loans have not been forgiven, and many of the Plaintiffs and putative Class Members have received communications from Kabbage requesting loan repayment, including the payment of fees and interest.  Plaintiffs and putative Class Members continue to incur damages based on the servicing of their loans by Kabbage.

***Defendant's Summary:***

Plaintiffs seek to bring a private cause of action asserting claims under state consumer protection laws for alleged violation of the CARES Act (and the SBA regulations that seek to enforce the CARES Act). Plaintiffs allege that KServicing failed to timely and completely process Paycheck Protection Program ("PPP") loan forgiveness applications.  Plaintiffs allege that the "SBA's Interim Final Rules require services to make a determination on a loan forgiveness application within

sixty days, as well as to do so in good faith."  Plaintiffs contend, however, that KServicing failed to respond within that timeline and, if it did respond, it did so to request irrelevant and non-existent documentation. Plaintiffs allege a nationwide class, as well as several state subclasses (Florida, Georgia, North Carolina, Michigan, and California) based on KServicing's purported failure to comply with the CARES Act and associated SBA regulations.

Each of the named Plaintiffs claim highly individualized facts detailing their attempts to apply for loan forgiveness but state that for various reasons, their applications were wrongly denied.  Despite Plaintiffs' pleading that the purported violations arise from alleged violations of the CARES Act and associated SBA regulations, Plaintiffs seek to bring claims under state law consumer protection statutes for the alleged breach of the CARES Act and SBA regulations. Specifically, Plaintiffs plead the following eight counts in their Complaint each stemming from a purported failure to comply with the CARES Act and SBA regulations: (1) declaratory judgment; (2) unjust enrichment; (3) alleged violation of California's Business and Professional Code; (4) alleged violation of Georgia's Uniform Deceptive Trade Practices Act; (5) alleged violation of North Carolina's Unfair and Deceptive Trade Practices Act; (6) alleged violation of the Michigan's Consumer Protection Act; (7) alleged violation of Florida's Deceptive and Unfair Trade

Practices Act; and (8) a bad faith and stubbornly litigious claim for recovery of fees under the Official Code of Georgia.

KServicing denies that it violated the CARES Act, the SBA Act (and regulations) and the state consumer protection statutes, as alleged, and further denies that Plaintiffs have suffered damage as a result of any wrongful actions of KServicing or that KServicing has been unjustly enriched by any alleged conduct. KServicing bases this statement on the facts and information currently available to it. In making this statement, KServicing does not waive any defenses and reserves the right to supplement or amend this statement as this case and the facts may develop.

   c) **The legal issues to be tried are as follows:**

   *Plaintiffs:*

1. Whether Kabbage negligently or intentionally failed to timely process thousands of PPP Loan forgiveness applications;

2. Whether Kabbage improperly refused to forgive Plaintiffs' PPP loans;

3. Whether Kabbage's actions or inactions violated the consumer protection statutes of the states of California, Georgia, North Carolina, Michigan and Florida;

4.  Whether Plaintiffs, Class Members, and Sub-Class Members were damaged by Kabbage's conduct and, if so, the appropriate amount of such damages;

5.  Whether, because of Kabbage's misconduct, Plaintiffs, Class Members, and Sub-Class members are entitled to declaratory and injunctive relief and, if so, the nature of such relief.

This is a non-exhaustive list of the legal issues to be tried.

*Defendants:*

1.  Whether Plaintiffs' can bring a private right of action for alleged violations of the CARES Act and/or the SBA Act;

2.  Whether Plaintiffs can bring state law claims based on purported violations of the CARES Act and/or the SBA Act;

3.  Whether Plaintiffs claims should be dismissed for failure to exhaust their administrative remedies;

4.  Whether Plaintiffs can bring claims for alleged violations of state laws other than Georgia, even though Georgia law governs the parties dispute, including as set forth in the parties' agreements;

5. Whether Plaintiffs have established that KServicing failed to comply with the CARES Act and associated SBA guidelines in processing their loan forgiveness applications;

6. Whether Plaintiffs have established all of the required elements for their claims against KServicing under the alleged Georgia and non-Georgia consumer protection statutes;

7. Whether Plaintiffs can establish they are are entitled to any damages pursuant to the Georgia and non-Georgia consumer protection statutes alleged in the Complaint; and

8. Whether Plaintiffs have met the requirements for class certification under Fed. R. Civ. P. 23, including, whether they can establish ascertainability, numerosity, commonality, typicality or adequacy as to their individual claims and that the claims in this case satisfy the requirements of Rule 23(b).

**d) The cases listed below (include both style and action number) are:**

There are no pending or previously adjudicated related cases filed in any state or federal court.

**2. This case is complex because it possesses one or more of the features listed below:**

_____ (1)    Unusually large number of parties

__x__ (2)    Unusually large number of claims or defenses

_____ (3)    Factual issues are exceptionally complex

_____ (4)    Greater than normal volume of evidence

_____ (5)    Extended discovery period is needed

_____ (6)    Problems locating or preserving evidence

_____(7)    Pending parallel investigations or action by government

__x___(8)    Multiple use of experts

_____(9)    Need for discovery outside United States boundaries

_____(10)   Existence of highly technical issues and proof

_____(11)   Unusually complex discovery of electronically stored
                 information

**3.    Counsel:**

   **The following individually-named attorneys are hereby designated as lead counsel for the parties:**

Plaintiff:          MaryBeth V. Gibson
                    **The Finley Firm, P.C.**
                    Piedmont Center
                    Building Fourteen, Suite 230
                    3535 Piedmont Road
                    Atlanta, Georgia 30305
                    Telephone: (404) 320-9979
                    mgibson@thefinleyfirm.com

                    Shane R. Heskin, *Esq.* (*pro hac vice*)
                    Justin E. Proper, *Esq.* (Georgia Bar # 141782)
                    **WHITE & WILLIAMS, LLP**
                    1650 Market Street, Suite 1800
                    Philadelphia, PA 19103
                    (215) 864-6329
                    heskins@whiteandwilliams.com

Defendant:          Uchenna Ekuma-Nkama

**Dentons US LLP**
303 Peachtree Street, N.E.
Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4198
uchenna.ekuma-nkama@dentons.com

4.      **Jurisdiction**:

   **Is there any question regarding this Court's jurisdiction?**

   \_\_\_\_\_ **Yes**   \_\_**X**\_\_ **No**

5.      **Parties to this Action:**

   **a.  The following persons are necessary parties who have not been joined:**
       None at this time.

   **b.  The following persons are improperly joined as parties:**
       None.

   **c.  The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**
       None.

   **d.  The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

6.      **Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.**

**a. List separately any amendments to the pleadings which the parties anticipate will be necessary:**

*By Plaintiff:*

None at this time. Plaintiffs reserve the right to seek amendment pursuant to

Fed. R. Civ. P. 15, Fed. R. Civ. P. 16, and relevant authority.

*By Defendant:*

KServicing does not at this time anticipate any further necessary amendments

to the pleadings, but will seek leave to amend should amendment become necessary

in the future to the extent permitted under the Federal Rules of Civil Procedure

**b. Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7.   Filing Times for Motions:**

**All motions should be filed as soon as possible.  The local rules set specific filing limits for some motions.  These times are restated below.**
**All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the Court to file later.  Local Rule 7.1A(2).**

a. *Motions to Compel*:  before the close of discovery or within the extension period allowed in some instances.  Local Rule 37.1.

b. *Summary Judgment Motions*:  within thirty (30) days after the close of discovery, unless otherwise permitted by Court Order.  Local Rule 56.1.

c. *Other Limited Motions*:  refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

d. *Motions Objecting to Expert Testimony*:  <u>Daubert</u> motions with regard to expert testimony no later than the date the proposed pre-trial order is submitted.  Refer to Local Rule 7.2F.

Counsel for the parties submit to the Court a proposed Scheduling Order in conjunction with this Joint Preliminary Report identifying deadlines for case activities through any motion for Class Certification.

8.   **Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.  NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).**

9.   **Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.**

*Plaintiffs' Position*

Plaintiffs request a scheduling conference to address, among other things:

1) The early exchange of initial discovery requests and discussion and potential resolution of objections thereto; and

2) A schedule for the same.

***Defendant's Position***

KServicing does not request a scheduling conference with the Court at this time, but reserves the right to request one, should the need arise. Pursuant to Local Rule 26.2(A), discovery has not commenced.  On May 31, 2022, KServicing moved to dismiss all claims brought by Plaintiffs through the filing of a Motion to Dismiss and Memorandum of Law in Support of its Motion to Dismiss. (Docs. 12, 12-1). Plaintiffs requested and received an extension through July 11, 2022 to file their response. (Doc. 14.) Accordingly, KServicing respectfully requests that the Court not require KServicing to expend additional time and expense in the defense of this action by engaging in premature discovery, pending the resolution of its motion to dismiss.

**10.   Discovery Period:**

**This discovery period commences thirty (30) days after the appearance of the first defendant by answer to the Complaint.  As stated in LR 26.2A responses to initiated discovery must be completed before expiration of the assigned discovery period.**

Cases in this Court are assigned to one of the following three (3) discovery tracks: (a) zero (0) months discovery period, (b) four (4) months discovery period, and (c) eight (8) months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the Complaint and service copies of the Complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

*Plaintiffs' Position:*

Discovery will be needed on Kabbage's business and finances before and after it became an approved PPP lender, its representations to the Department of Treasury to qualify as an approved lender, its representations to Plaintiffs and the Class Members during the loan process, its representations to Plaintiffs and the Class Members during the loan forgiveness process and ongoing representations being made to Plaintiffs and Class Members.

Discovery will be needed on Kabbage's decision not to participate in the SBA's Loan Forgiveness Portal and require borrowers to go through a lengthy, time-consuming forgiveness application. Discovery will be needed on Kabbage's loan processing software and technology, the fact that its initial forgiveness portal

platform did not work and was inoperable for upwards of six months, and once its new forgiveness portal platform was operational, why Kabbage then required borrowers to re-submit documentation that had previously been submitted and reviewed, among other issues with the forgiveness portal platforms.

Discovery will be needed on Kabbage's servicing agreements with its partner banks including, but not necessarily limited to, Customers Bank, Celtic Bank and Cross River Bank.  With respect to Customers Bank alone, Kabbage has publicly acknowledged that it has entered into contracts for the provision of various loan services.  Plaintiffs contend that discovery into these agreements, as amended, and any monies purportedly owed and/or paid under them is within the scope of discovery in this case.

Discovery will be needed regarding communications with the Small Business Administration, as well as Kabbage's partner banks (Customers Bank, Celtic Bank and Cross River Bank), including but not limited to, communications regarding Kabbage's decision not to participate in the SBA's direct borrower forgiveness portal, Kabbage's attempt to service loans of its Customers Bank, any and all borrower complaints regarding Kabbage, and related issues.

This is a non-exhaustive list of proposed discovery.

***Defendant's Position:***

Although not an exhaustive list, KServicing anticipates discovery into the following areas: the facts and circumstances surrounding the allegations in the Complaint; Plaintiff's financial and credit history; Plaintiffs' communications with KServicing; the causal relationship between Plaintiffs' alleged damages and any loan forgiveness denial by KServicing; relevant policies and procedures governing the loan application and loan forgiveness process; correspondence between Plaintiffs.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery, please state those reasons in detail below:**

*Plaintiffs' Position:*

Given the complexity of this case, Plaintiffs believe an eight (8) month discovery period is necessary.

*Defendants' Position:*

To the extent this matter proceeds to discovery, KServicing believes that a bifurcated discovery period is appropriate, to allow the parties to litigate the issues related to Plaintiffs and class certification before potentially incurring the additional expenses of addressing putative class members issues. KServicing believes 8-months is appropriate through briefing on any motion for class-certification, and that

after the Court has ruled on any motion for class certification, the parties can proceed with merits discovery

**11.     Discovery Limitation and Discovery of Electronically Stored Information:**

> **(a)     What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

The parties agree that pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure, any pleadings or other papers may be served by sending such documents by email to the primary and/or secondary email address listed below (or any updated email address provided to all counsel of record). The parties also agree, upon request, to promptly (no later than the second business day after the day of service) provide the sending party with confirmation of receipt of the service by email. If an error or delayed delivery message is received by the sending party, that party shall promptly notify the intended recipient of the message and serve the pleading of other papers by other authorized means.

The parties also intend to meet and confer regarding a Discovery Order, which will contain the proposed limits on discovery and any proposed modification of the local rules as to discovery. The parties will submit a proposed Discovery Order for the Court's consideration, along with any areas of dispute requiring resolution.

The parties reserve the right to seek such orders should they become necessary.

**(b)   Is any party seeking discovery of electronically stored information?**

_____x_____ **Yes**   _____ **No**

**If "yes,"**

**(1)   The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

**(2)   The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

_____

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

To the extent discovery commences in this action, the parties intend to meet and confer regarding an ESI Protocol, and will submit a proposed ESI Protocol for the Court's consideration, along with any areas of dispute requiring resolution.

**12.   Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

In conjunction with this Joint Preliminary Report, counsel for the parties are submitting to the Court a proposed Scheduling Order identifying deadlines for case activities through any motion for Class Certification.

To the extent discovery commences in this action, the parties intend to meet and confer regarding a Protective Order and will submit it to the Court for consideration, along with any areas of dispute requiring resolution.

The parties reserve the right to seek additional orders should they become necessary.

**13.   Settlement Potential:**

**(a)   Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on June 15, 2022 and that they participated in settlement discussions.  Other persons who participated are listed according to party:**

**For Plaintiffs:**    MaryBeth V. Gibson

**For Defendant:**    Uchenna Ekuma-Nkama
Drew W. Marrocco

**(b) All parties were promptly informed of all offers of settlement, and following discussion by all counsel, it appears that there is now:**

**(_____)    A possibility of settlement before discovery**
**(___X___)    A possibility of settlement after discovery**

26

      **(_____)**        **A possibility of settlement, but a conference with the judge is needed**

      **(_____)**        **No possibility of settlement**

**(c)** **Counsel (X) do or ( ) do not intend to hold additional settlement conferences among themselves prior to the close of discovery.  The parties anticipate holding another settlement conference within the next 90 days but have not yet determined the date on which the settlement conference will be held.**

**(d)** **The following specific problems have created a hindrance to settlement of this case:**

**14.** **Trial by Magistrate Judge:**

**Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

**(a)** **The parties (_____) do consent to having this case tried before a magistrate judge of this Court.  A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the Clerk of Court this \_\_\_\_\_ day of _____, 2016.**

**(b)** **The parties (X) do not consent to having this case tried before magistrate judge of this Court.**

Respectfully submitted this 29th day of June, 2022.

*/s/MaryBeth V. Gibson*                    */s/Uchenna  Ekuma-Nkama*
MaryBeth V. Gibson                       Uchenna Ekuma-Nkama
Georgia Bar No. 725843                  Georgia Bar No. 957861
**THE FINLEY FIRM, P.C.**               Alize D. Mitchell
Piedmont Center                         Georgia Bar No. 349963
Building Fourteen, Suite 230           **DENTONS US LLP**
3535 Piedmont Road                     303 Peachtree Street, N.E.
Atlanta, Georgia 30305                  Suite 5300

Telephone: (404) 320-9979
mgibson@thefinleyfirm.com

Shane R. Heskin (pro hac vice)
Justin E. Proper
Georgia Bar No. 141782
**WHITE & WILLIAMS, LLP**
1650 Market Street, Suite 1800
Philadelphia, PA 19103
Telephone: (215) 864-6329
heskins@whiteandwilliams.com

*Counsel for Plaintiffs*

Atlanta, GA 30308
Telephone: (404) 527-4000
uchenna.ekuma-nkama@dentons.com
alize.mitchell@dentons.com

Drew W. Marrocco (pro hac vice)
**DENTONS US LLP**
1900 K Street NW
Washington, DC 20006
Telephone: (202) 496-7500
drew.marracco@dentons.com

Tomasita L. Sherer (pro hac vice)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
tomasita.sherer@dentons.com
*Counsel for Defendant*

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: June 29, 2022.

/s/ *MaryBeth V. Gibson*
MARYBETH V. GIBSON

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29th, 2022, I filed a copy of the foregoing document using the Court's ECF/CM system, which will automatically send notice of such filing to all counsel of record in this matter.

*/s/MaryBeth V. Gibson*
MaryBeth V. Gibson